# UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF WISCONSIN

### MILWAUKEE DIVISION

**17-C-1349**

Michael Stoller, A disable person and Christopher Stoller,
A disabled person,

                Plaintiffs

v.

Walworth County, Valerie Etzel, Walworth County Treasurer,
Randy Timms, District 1, Walworth County Supervisor, William
Norem, District 2, Walworth County Supervisor, Tim Brellenthin,
District 3, Walworth County Supervisor, Paul Yvarra, District 4,
Walworth County Supervisor, Charlene Staples, District 5,
Walworth County Supervisor, Kathy Ingersoll, District 6,
Walworth County Treasurer, David Weber, District 7, Walworth
County Supervisor, Daniel G. Kilkenny, District 8, Walworth
County Supervisor, Susan M. Pruessing, District 9, Walworth
County Supervisor, Kenneth H. Monroe, District 10, Walworth
County Supervisor, and Nancy Russell, District 11, Walworth
County Supervisor, Defendants John Doe 1-X

                Defendants

**Jury Demand**
**COMPLAINT FOR**
**DAMAGES**
(1) Violations of the
Racketeer
Influenced and
Corrupt
Organizations Act (18
U.S.C.
§ 1962(c));
(2) Violations of the
Racketeer
Influenced and
Corrupt
Organizations Act (18
U.S.C.
§ 1962(d)); et al

## COMPLAINT

1.      This case concerns a devious scheme perpetrated by Walworth County
Defendants ("WCD") in order to unlawfully sell tax delinquent real estate[1] on September 14,
2017 and a pattern of unlawful acts as described herein.

---

[1] Statute 75.69 Sale of tax delinquent real estate tends to induce the commission of unlawful acts by the Counties in
the State of Wisconsin or the accomplishment of the purpose is otherwise against public policy. Which is the seizure
of private tax delinquent real estate, not for the county to recover its delinquent real estate taxes, but for the county
to profit at selling the tax delinquent real estate for inflated market values. Therefore, Wisconsin Statute Chapter 75
Land sold for Taxes Paragraph 75.69 Sales of tax delinquent real estate should be declared unconstitutional.

2.     WCD knowingly and willfully circumvent their legal statutory obligations under Wisconsin Statute 75.69 which states: "no tax delinquent real estate acquired by a county may be sold unless the sale and appraised value of such real estate has been advertised by publication of a Class 3 Notice Ch. 985"[2].

3.     WCD prior to advertising their tax delinquent real estate fail to obtain any valid real estate appraisals in accordance with the strict ethical and competency rules of the Uniform Standards of Professional Appraisal Practice ("USPAP"), in connection with the county-owned property which is the subject of a Tax Sale Bid sale from January 1, 2016 to September of 2017.

4.     Walworth County Defendants to fuel its appetite for profit which excluded the mere attempt to sale tax delinquent real estate to recover its lost real estate taxes, developed a scheme that would allow Walworth County to sell their seized real estate for back taxes, at highly inflated market prices, which were in direct competition with private property owners sales of their real estate.

5.     The scheme allowed Defendants to eliminate the delay associated with performing and fulfilling the strict requirements of Wisconsin Statue 75.69  Sale of tax delinquent real estate by merely estimating the appraised value of the tax delinquent real estate rather than acquiring USPAP appraisals, and rapidly selling the Defendants' county-owned properties, all to the financial detriment of consumers who are forced to pay  alleged "market" prices for properties that  were not  actually  ever appraised.  In the end, through Defendants' uniform practice of systematically corrupting the appraisal process in connection with establishing artificially high cost for the county owned properties, without any warranty of

---

[2] At page 18 updated 2015-16 Wis. Stats. Published and certified under s. 35.18 August 24, 2017, 75.69 Sale of tax delinquent real estate.

"guarantee with respect to the use, condition, access or occupancy of the property, all to the financial detriment of consumers.

6.     Obtaining an legitimate appraisal is a critical element of the tax sale of tax delinquent properties for consumers because it provides a buyer or homeowner with an accurate, objective and supportable opinion of a property's value; and it protects the financial and public policy interests in real estate transactions involving federally-regulated and federally-insured institutions like Bank of America, Wells Fargo Bank, Citibank. In that regard, Title XI of the Financial Institutions Reform Act of 1989 ("FIRREA") *requires* financial institutions like Bank of America to obtain regulated appraisals, performed in strict compliance with USPAP's ethical and competency requirements, in connection with a sale or refinancing of property.

7.     At the core of the applicable federal and state laws, as well as the ethics and competency rules of USPAP, is the requirement that professional appraisers be fully independent and objective in reaching their opinions of value. Unlike the vague requirement of Wisconsin Statute Chapter 25, Section 75.69 which only requires that "appraised value as being a value set by the county board, or a committee that has been designated by the county board, or by a certified appraiser." This appraisal standards encourages appraised values that our not in USPAP's ethical and competency requirements in connection with the sale of Walworth County Tax Delinquent Real Estate.

8.     The scheme that the defendants are involved in to sell tax delinquent property to comply the Wisconsin Statutory requirement that, all of the Counties in Wisconsin, including the Defendant's Walworth County, manufacture false appraisal values. prior to advertising their tax

delinquent property for sale,[3] not with the intent to recover its tax delinquent taxes, but to recover inflated market values, in direct competition with private real estate sellers.

9.    Walworth County unlawfully advertises the sale of it tax delinquent real estate with indifference to appraisal's accuracy and/or was not in fact a USPAP Compliant appraisal(s), and instead manufactured phony appraisal(s), used to facilitate the sale of their tax delinquent real estate.

10.    Walworth County defendants unlawfully employ a uniform Practice of engaging in systematic, unlawful conduct with respect to the preparation of all appraisals for sale of its tax delinquent real estate.

11. These sham appraisals (**Exhibit 1**) are performed with indifference to the appraisals' accuracy, and instead are designed to ensure that appraisal reports contained an inflated or manipulated property "value" which always exceeded the tax delinquency of the prior owner.

12.    Walworth County Defendants agreed to knowingly, fraudulently, systematically and uniformly create phony so-called, self-serving "appraisals" on their tax delinquent real-estate which were not performed in accordance with USPAP standards and/or were performed with indifference to any valid appraisal standards in order to facilitate the unlawful sale of their tax delinquent real estate, not to recover the tax delinquency, but to profit from the sale of the tax delinquent real estate at inflated, manufactured market prices.

13.    Walworth County operates an illegal enterprise whose purpose is not to collect the delinquent Real Estate Tax on property acquired by the county, but to unlawfully seize property

---

[3] Utilization of Wisconsin State Statute 75.69 for the sale indicates that all tax delinquent property acquired by a county must first be advertised by a Class 3 notice in the newspaper, meaning it has to be advertised weekly for three weeks in a row. Prior to advertising, each property must be assigned an appraised value often referred to as the minimum bid. The statute defines appraised value as being a value set by the county board, or a committee that has been designated by the county board, or by a certified appraiser. The first time property is advertised it may only be sold at or above the minimum bid. If any bids are received below that amount they must be rejected. *Realtor/Auctioneer –Laura Henning-Lorenz, Sheboygan County Treasurer/Real Property Listing* .At page 25 https://www.wicounties.org/uploads/pub/october-2015-treasurers-final.pdf

4

from its home owners in order to sell the property at inflated manufactured apprised rates and to profit from the sale of their tax delinquent real estate.

14. In effect, through Walworth County Defendants uniform practice of systematically corrupting the appraisal process, which is aided and abetted by the language of the Wisconsin Statue Chapter 75, Paragraph 75.69 which the statute defines appraised value, vaguely, "as being a value set by the county board, or a committee that has been designated by the county board, or by a certified appraiser." Walworth County Defendants produce so-called "appraisal reports" with indifference to the appraisals' accuracy, which are *not* legitimate opinions of value.[4]

Plaintiffs assert claims under the Racketeer Influenced and Corrupt Practices Act, and state statutory and common law.

## II. JURISDICTION AND VENUE

15. Jurisdiction is proper in this Court under 28 U.S.C. § 1332(d)(2). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000. Defendants are citizens of the State of Wisconsin.

16. This Court also has jurisdiction over this matter under 28 U.S.C. §§ 1331, 1961, 1962 and 1964. This Court has personal jurisdiction over Defendants under 18 U.S.C. §1965. In addition, under 28 U.S.C. § 1367, this Court may exercise supplemental jurisdiction over the state law and common law claims because all of the claims are derived from a common nucleus of operative facts and are such that Plaintiffs ordinarily would expect to try them in one judicial proceeding.

---

[4] ) There is an inherent conflict for a party with an interest in a real estate transaction involving an appraisal, to improperly influence the value of the appraisal to obtain a greater appraisal value of the real estate than what an independent appraiser might come up with

17.     Venue lies within this judicial district under 28 U.S.C. § 1391(b), (c) and (d), and under 18. U.S.C. § 1965, because each of the Defendants transacted business in this District and because a substantial part of the events or omissions giving rise to Plaintiffs' claims in this lawsuit occurred, among other places, in this District.

## PARTIES

18.     Plaintiffs Christopher Stoller, 68, an individual, residing in Cook County Illinois, disable person, a protected person as defined by the Americans for Disability Act, and a Wisconsin Property holder.  Michael Stoller, 26 an adult-child, residing in Cook County Illinois, a disabled person, a protected person as defined by the Americans for Disability Act and a holder of an equitable interest in Walworth County property.

## DEFENDANTS

### Members of the Enterprise

19.     Each of the entities named below were members of the RICO Enterprise.

20.     Walworth County, a duly governmental organization[5] in Walworth County Wisconsin, 100 W. Walworth, Elkhorn, Wi 53121

21.     Valerie Etzel, Walworth County Treasurer, a resident of Wisconsin is sued individually and in her official capacity, upon information and belief was Treasurer of Walworth County, Wisconsin and in charge of the officers, agents, servants and employees under her control.  Valerie Etzel was involved, conspired, and colluded with Walworth County in the course and scope of her employment and had knowledge of the relevant facts of the Plaintiffs' controversy.  Valerie Etzel is liable personally and liability under the Doctrine of Respondent

---

[5]Because organizations act through individuals, (1) acts by an organization's officials under actual or purported authority to act for the organization, (2) acts by agents of the organization within their authority to act, or (3) acts ratified by the organization should be considered as activities "of the organization."

6

Superior, under the Pinkerton Theory of Liability (applied in civil matter) and the inequitable conduct of the agent[6]. Valerie Etzel participated in and encouraged, sanctioned, condoned and ratified the unlawful conduct of her associates, the Walworth County Defendants and co-conspirators, board of Supervisors et al.

## DEFENDANTS, CO-CONSPIRATORS

### Board of Supervisors

22. Randy Timms, District 1, Walworth County Supervisor, a resident of Wisconsin is sued individually and in his official capacity, upon information and belief was Supervisor of Walworth County, Wisconsin and in charge of the officers, agents, servants and employees under his control. Randy Timms was involved, conspired, and colluded with Walworth County in the course and scope of his employment and had knowledge of the relevant facts of the Plaintiffs' controversy. Randy Timms is liable personally and liability under the Doctrine of Respondent Superior, under the Pinkerton Theory of Liability (applied in civil matter) and the inequitable conduct of the agent[7]. Randy Timms participated in and encouraged, sanctioned, condoned and ratified the unlawful conduct of his associates, the Walworth County Defendants and co-conspirators, board of Supervisors et al.

23. William Norem, District 2, Walworth County Supervisor, a resident of Wisconsin is sued individually and in his official capacity, upon information and belief was Supervisor of Walworth County, Wisconsin and in charge of the officers, agents, servants and employees under his control. William Norem was involved, conspired, and colluded with Walworth County in the course and scope of his employment and had knowledge of the relevant facts of the Plaintiffs'

---

[6]Agent's inequitable acts may be imputed to the principle whether or not the principle knew of the agent's misconduct
[7]Agent's inequitable acts may be imputed to the principle whether or not the principle knew of the agent's misconduct

7

controversy. William Norem is liable personally and liability under the Doctrine of Respondent Superior, under the Pinkerton Theory of Liability (applied in civil matter) and the inequitable conduct of the agent[8]. William Norem participated in and encouraged, sanctioned, condoned and ratified the unlawful conduct of his associates, the Walworth County Defendants and co-conspirators, board of Supervisors et al.

24.    Tim Brellenthin, District 3, Walworth County Supervisor, a resident of Wisconsin is sued individually and in his official capacity, upon information and belief was Supervisor of Walworth County, Wisconsin and in charge of the officers, agents, servants and employees under his control. Tim Brellenthin was involved, conspired, and colluded with Walworth County in the course and scope of his employment and had knowledge of the relevant facts of the Plaintiffs' controversy. Tim Brellenthin is liable personally and liability under the Doctrine of Respondent Superior, under the Pinkerton Theory of Liability (applied in civil matter) and the inequitable conduct of the agent[9]. Tim Brellenthin participated in and encouraged, sanctioned, condoned and ratified the unlawful conduct of his associates, the Walworth County Defendants and co-conspirators, board of Supervisors et al.

25.    Paul Yvarra, District 4, Walworth County Supervisor, a resident of Wisconsin is sued individually and in his official capacity, upon information and belief was Supervisor of Walworth County, Wisconsin and in charge of the officers, agents, servants and employees under his control. Paul Yvarra was involved, conspired, and colluded with Walworth County in the course and scope of his employment and had knowledge of the relevant facts of the Plaintiffs' controversy.    Paul Yvarra is liable personally and liability under the Doctrine of Respondent

---

[8]Agent's inequitable acts may be imputed to the principle whether or not the principle knew of the agent's misconduct
[9]Agent's inequitable acts may be imputed to the principle whether or not the principle knew of the agent's misconduct

8

Superior, under the Pinkerton Theory of Liability (applied in civil matter) and the inequitable conduct of the agent[10]. Paul Yvarra participated in and encouraged, sanctioned, condoned and ratified the unlawful conduct of his associates, the Walworth County Defendants and co-conspirators, board of Supervisors et al.

26. Charlene Staples, District 5, Walworth County Supervisor, a resident of Wisconsin is sued individually and in her official capacity, upon information and belief was Supervisor of Walworth County, Wisconsin and in charge of the officers, agents, servants and employees under her control. Charlene Staples was involved, conspired, and colluded with Walworth County in the course and scope of her employment and had knowledge of the relevant facts of the Plaintiffs' controversy. Charlene Staples is liable personally and liability under the Doctrine of Respondent Superior, under the Pinkerton Theory of Liability (applied in civil matter) and the inequitable conduct of the agent[11]. Charlene Staples participated in and encouraged, sanctioned, condoned and ratified the unlawful conduct of her associates, the Walworth County Defendants and co-conspirators, board of Supervisors et al.

27. Kathy Ingersoll, District 6, Walworth County Treasurer, a resident of Wisconsin is sued individually and in her official capacity, upon information and belief was Treasurer of Walworth County, Wisconsin and in charge of the officers, agents, servants and employees under her control. Kathy Ingersoll was involved, conspired, and colluded with Walworth County in the course and scope of her employment and had knowledge of the relevant facts of the Plaintiffs' controversy. Kathy Ingersoll is liable personally and liability under the Doctrine of Respondent Superior, under the Pinkerton Theory of Liability (applied in civil matter) and the inequitable

---

[10]Agent's inequitable acts may be imputed to the principle whether or not the principle knew of the agent's misconduct

[11]Agent's inequitable acts may be imputed to the principle whether or not the principle knew of the agent's misconduct

conduct of the agent[12]. Kathy Ingersoll participated in and encouraged, sanctioned, condoned and ratified the unlawful conduct of her associates, the Walworth County Defendants and co-conspirators, board of Supervisors et al.

28.    David Weber, District 7, Walworth County Supervisor, a resident of Wisconsin is sued individually and in his official capacity, upon information and belief was Supervisor of Walworth County, Wisconsin and in charge of the officers, agents, servants and employees under her control. David Weber was involved, conspired, and colluded with Walworth County in the course and scope of his employment and had knowledge of the relevant facts of the Plaintiffs' controversy. David Weber is liable personally and liability under the Doctrine of Respondent Superior, under the Pinkerton Theory of Liability (applied in civil matter) and the inequitable conduct of the agent[13]. David Weber participated in and encouraged, sanctioned, condoned and ratified the unlawful conduct of his associates, the Walworth County Defendants and co-conspirators, board of Supervisors et al.

29.    Daniel G. Kilkenny, District 8, Walworth County Supervisor, a resident of Wisconsin is sued individually and in his official capacity, upon information and belief was Supervisor of Walworth County, Wisconsin in charge of the officers, agents, servants and employees under her control. Daniel G. Kilkenny was involved, conspired, and colluded with Walworth County in the course and scope of his employment and had knowledge of the relevant facts of the Plaintiffs' controversy. Daniel G. Kilkenny is liable personally and liability under the Doctrine of Respondent Superior, under the Pinkerton Theory of Liability (applied in civil

---

[12]Agent's inequitable acts may be imputed to the principle whether or not the principle knew of the agent's misconduct
[13]Agent's inequitable acts may be imputed to the principle whether or not the principle knew of the agent's misconduct

matter) and the inequitable conduct of the agent[14]. Daniel G. Kilkenny participated in and encouraged, sanctioned, condoned and ratified the unlawful conduct of his associates, the Walworth County Defendants and co-conspirators, board of Supervisors et al.

30.    Susan M. Pruessing, District 9, Walworth County Supervisor, a resident of Wisconsin is sued individually and in her official capacity, upon information and belief was Supervisor of Walworth County, Wisconsin in charge of the officers, agents, servants and employees under her control. Susan M. Pruessing was involved, conspired, and colluded with Walworth County in the course and scope of her employment and had knowledge of the relevant facts of the Plaintiffs' controversy. Susan M. Pruessing is liable personally and liability under the Doctrine of Respondent Superior, under the Pinkerton Theory of Liability (applied in civil matter) and the inequitable conduct of the agent[15]. Susan M. Pruessing participated in and encouraged, sanctioned, condoned and ratified the unlawful conduct of her associates, the Walworth County Defendants and co-conspirators, board of Supervisors et al.

31.    Kenneth H. Monroe, District 10, Walworth County Supervisor, a resident of Wisconsin is sued individually and in his official capacity, upon information and belief was Supervisor of Walworth County, Wisconsin in charge of the officers, agents, servants and employees under her control. Kenneth H. Monroe was involved, conspired, and colluded with Walworth County in the course and scope of his employment and had knowledge of the relevant facts of the Plaintiffs' controversy. Kenneth H. Monroe is liable personally and liability under the Doctrine of Respondent Superior, under the Pinkerton Theory of Liability (applied in civil

---

[14]Agent's inequitable acts may be imputed to the principle whether or not the principle knew of the, agent's misconduct

[15]Agent's inequitable acts may be imputed to the principle whether or not the principle knew of the agent's misconduct

matter) and the inequitable conduct of the agent[16]. Kenneth H. Monroe participated in and encouraged, sanctioned, condoned and ratified the unlawful conduct of his associates, the Walworth County Defendants and co-conspirators, board of Supervisors et al.

32. Nancy Russell, District 11, Walworth County Supervisor, a resident of Wisconsin is sued individually and in her official capacity, upon information and belief was Supervisor of Walworth County, Wisconsin and in charge of the officers, agents, servants and employees under her control. Nancy Russell was involved, conspired, and colluded with Walworth County in the course and scope of her employment and had knowledge of the relevant facts of the Plaintiffs' controversy. Nancy Russell is liable personally and liability under the Doctrine of Respondent Superior, under the Pinkerton Theory of Liability (applied in civil matter) and the inequitable conduct of the agent[17]. Nancy Russell participated in and encouraged, sanctioned, condoned and ratified the unlawful conduct of her associates, the Walworth County Defendants and co-conspirators, board of Supervisors et al.

32a Defendants John Doe 1-X are Walworth County employees, agents, attorneys who aided and abetted, defendantes, other Walworth County elected officials, secretaries, employees, responsible for the sham appraisals. These individuals are currently unknown, but Plaintiff expects that their identities will be uncovered in the course of discovery. . Defendants John Doe 1-X. are sued in their individual capacity.

---

[16] Agent's inequitable acts may be imputed to the principle whether or not the principle knew of the agent's misconduct
[17] Agent's inequitable acts may be imputed to the principle whether or not the principle knew of the agent's misconduct

12

## FACTUAL BACKGROUND

### Real Estate Appraisal Standards

33.     An appraisal is an integral part of a real estate loan transaction. It provides purchasers of Walworth County Tax Delinquent Property with the means to obtain an opinion of value from a licensed and qualified specialist. It also provides protection for financial and public policy interests in real estate transactions with federally-insured financial institutions.

34.     Appraisals are typically governed by a number of uniform standards, regulations and laws 44. In 1989, Congress adopted Title XI of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"). See 12 U.S.C. §§ 3331 *et seq.* (hereafter "Title XI"). Title XI *requires* federally-insured financial institutions to obtain a written appraisal that strictly conforms to USPAP standards in connection with any real property insured by the Federal Housing Administration ("FHA"). See 12 U.S.C. § 1708(f).

35.     Federal law also requires that such appraisals "be performed in accordance with uniform standards, by individuals who have demonstrated competence and whose professional conduct is subject to effective supervision." *Id.* at § 1708(f)(1). Additionally, such USPAP appraisals "shall be performed in accordance with generally accepted appraisal standards," and each appraisal is to be a written statement that is "independently an[d] impartially prepared by a licensed or certified appraiser setting forth an opinion of defined value of an adequately described property as of a specific date, supported by presentation and analysis of relevant market information." 12 U.S.C. § 1708(f)(1)(A), (B).

36.     The USPAP requires appraisers to conduct their appraisals independently and competently: "An appraiser must perform assignments with impartiality; objectivity, and independence, and without accommodation of personal interests. In appraisal practice, an

appraiser must not perform as an advocate for any party or issue." USPAP Ethics Rule. USPAP rules also provide that "[a]n appraiser must not accept an assignment that includes the reporting of predetermined opinions and conclusions." *Id.*

37.     The USPAP also requires that an appraiser communicate the result of an appraisal in a manner "that is not misleading." The purpose of this rule is to ensure that "the client and any intended users whose expected reliance on an appraisal may be affected by the extent of the appraiser's investigation are properly informed and are not misled as to the scope of work." *Id.* In this regard, the appraiser's "scope of work" must include the research and analyses necessary to develop credible assignment results. To that end, an appraiser must not "exclude any information or procedure that would appear to be relevant to the client, an intended user, or the appraiser's peers in the same or a similar result." *Id.* Additionally, an appraiser "must not allow assignment conditions or other factors to limit the extent of research or analysis to such a degree that the resulting opinions and conclusions developed in an assignment are not credible in the context of the intended use of the appraisal." *Id.*

38.     The USPAP further provides that it is unethical for an appraiser to accept an assignment, or to have a compensation arrangement for an assignment, that is contingent on any of the following:

        (a)     the reporting of a predetermined result (e.g., opinion of value);

        (b)     a direction in assignment results that favors the cause of the client;

        (c)     the amount of a value opinion;

        (d)     the attainment of a stipulated result; or

        (e)     the occurrence of a subsequent event directly related to the appraiser's opinions and specific to the assignment's purpose.

39.     In addition, each USPAP appraisal report must contain a certification signed by the appraiser, stating that his or her compensation for completing the assignment is not contingent upon the development or reporting of a predetermined value or direction in value that favors the cause of the client. *Id.*

40.     The USPAP standards are incorporated into federal law, 12 C.F.R. §34.44. Such law provides that an in-house or staff appraiser at a bank "must be independent of the lending, investment, and collection functions and not involved, except as an appraiser, in the federally related transaction, and have no direct or indirect interest, financial or otherwise, in the property." 12 C.F.R. § 34.45. And, for appraisers who are independent contractors or "fee" appraisers, the regulation similarly requires that "the appraiser shall be engaged directly by the regulated institution or its agent, and have no direct or indirect interest, financial or otherwise, in the property transaction." 12 C.F.R. § 34.45.

41.     Appraisers and appraisals are also regulated by state laws, including which provides, in pertinent part, that: "no person with an interest in a real estate transaction involving a valuation shall improperly influence or attempt to improperly influence the development, reporting, result, or review of that valuation, through coercion, extortion, bribery, intimidation, compensation, or instruction."

42.     The defendants do not use the USPAP appraisal standards to determine the value of tax delinquent real estate that Walworth County sells.

## FACTS

43.     The Plaintiffs are owners of property in Walworth County, Wisconsin, since 1955. On August 4, 2017, the Plaintiffs' received a letter from Valerie Etzel, the Walworth County Treasurer, informing them that Walworth County took possession of a parcel of property that "borders your property and may be of interest to you" (**Exhibit 1,** a true and correct copy of the August 4, 2017 letter).

44.     The said property that abuts the Plaintiff has no road access. The road dead ends a 100 feet before the property (Tax Key Number JLCD 00986.) Further the easement for the road was deeded back to the adjacent property owners. The said adjacent lot is thus an unbuildable lot that has value only to the Plaintiff because the lot borders the Plaintiff's property. The said vacant lot has a possible value of $2,500.00, only to the adjacent property holder, the Plaintiffs. The said property identified as Tax Key Number JLCD 00986, is not a buildable lot, the Walworth County Defendants fraudulently apprised the value at $11,400.00, without a USPAP appraisal or any valid appraisal. The value at $11,400.00 was *not a* legitimate opinion of the vacant, lots actual value. (Land locked without ingress or egress from a county road).

45.     The delinquent real estate taxes on the lot identified as JLCD 00986 were about $2,700.00. The Defendants foreclosed on the lot identified as JLCD 00986 see (**Exhibit 2**). The Defendants listed the lot identified as JLCD 00986 with a fraudulent appraised value of $11,400 for bidding at their tax sale of delinquent Real Estate in September of 2017 (**Exhibit 3**).

        The fraudulent appraised value of $11,400 for an inaccessible lot, was $8,700.00 more than the $2700 in back taxes owed to on lot JLCD 00986 to Walworth County. The Walworth

County defendants intended to make a profit of $8,700.00 on the foreclosed property known as JLCD 00986, which was in excess of the $2700.00 (Approx.) owed in back real estate taxes.[18]

46.    At the invitation of the Walworth County Treasurer, Valerie Etzel (**Exhibit 1**) the Plaintiff made a bid[19] (**Exhibit 4**) on a vacant lot 100x100 feet that has no access, no ingress or egress by a designated road, tax delinquent property, known as JLCD 00986 of $2,500.

47.    The Walworth County Defendants rejected the Plaintiff's bid of $2,500 for property known as JLCD 00986 on the frivolous grounds that it was below their illegitimate appraised value of $11,400 (**Exhibit 5**).

48.    Plaintiffs are informed and believe that Defendants' engaged in uniform practice of systematically corrupting the appraisal process in connection with false, inaccurate legally mandated appraisals  assigned to properties which Walworth Defendants attempt to sell at their Treasurer's Office In Rem Tax Foreclosures (**Exhibit 1**) which are far in excess of the property tax owed on the foreclosed properties.

49.    The Walworth County Defendants appraisals are generated without regard for the appraisal's accuracy and instead provided high values which are designed to satisfy their lust for profit, after foreclosing on their tax delinquent property owners.  During this time frame between March of 2016 and August of 2017, in furtherance of Defendants' unlawful appraisal scheme, Plaintiffs are informed and believe that the Walworth Defendants, through its agents, failed to prepare and/or or caused to be prepared sham appraisals for the all of the properties listed on the

---

[18] Under any standard of law this is criminal for a Wisconsin County, Walworth County to be allowed under the color of law to exploit it's right to collect late taxes on its real estate, to allow the said county, to knowingly and willfully foreclosure on tax delinquent property owners, for back real estate taxes with the intent to retail that seized property for inflated market values, with phony, sham appraisals, in direct competition with private property owners who are selling their real estate. This court should, sue sponte, strike down the Wisconsin Statue Chapter 75 Land Sold for Taxes Chapter ¶75.69 that permits this as unconstitutional.

[19] The Plaintiff also bid on two other Walworth County properties known as JLCB 02054 AND fdla on 0208. Plaintiff's bids were also rejected by Walworth County Defendants on the grounds that plaintiff's bids were less than the appraised values.

2017 Treasurer's In Rem Tax Foreclosure list (**Exhibit 1**) which did not conform to the Uniform Standards of Professional Appraisal Practice and the Code of Professional Ethics of the Appraisal Institute.

50.     All of the said Appraised values listed on the Walworth County 2017 Tax foreclosure list are "false and fraudulent" and were not prepared, if prepared at all, according to USPAP standards, regulations and laws governing appraisals and, thus, were illegitimate and violated Title XI, FIRREA, FHA requirements, and state law, among others. Instead, the Walworth County defendants concealed their fraudulent appraisal scheme from the public.

51.     Defendants' uniform practice of systematically corrupting the appraisal process in Connection with the sale of tax delinquent real state was never mentioned that the Walworth County Defendants were indifferent to the appraisal's accuracy and instead, the purpose was to create pre-textual appraisals in order to streamline Defendants' sale of tax delinquent property business and list tax delinquent properties faster rather than to provide an honest appraisal value of the tax delinquent property values.

52.     Plaintiffs are informed and believes that in connection with the Walworth County Defendants appraisal scheme, rejected the three bids that the Plaintiff made for tax in that the plaintiff did not bid the alleged appraised value established by the Walworth County Defendants (**Exhibit 6**).

53.     Plaintiff gave constructive notice that it would sue the Walworth County Defendants if it's said bids were rejected for any unconstitutional reason (**Exhibit 4**). Plaintiff's bids were rejected (**Exhibit 5**). This law suit follows.

## FIRST CLAIM FOR RELIEF
## VIOLATIONS OF THE RACKETEER INFLUENCED
## AND CORRUPT ORGANIZATIONS ACT
## (18 U.S.C. § 1962(C))

54.    Plaintiffs incorporate by reference in this claim for relief each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

55.    Plaintiffs bring this cause of action on behalf of themselves.

### The Rico Enterprise

56.    Walworth County and Walworth County Defendants are each persons within the meaning of Title 18 United States Code section 1961(3).

57.    Walworth County and  Walworth County Defendants at all relevant times, in violation of Title 18 United States Code section 1962(c),  including their directors, employees, and agents, conducted the affairs of an association-in-fact Enterprise, as that term is defined in Title 18 United States Code section 1961(4) (the "Walworth County Enterprise"). The affairs of the Walworth County Enterprise affected interstate commerce through a pattern of racketeering activity. By numerous mailings using the U.S. Postal Service and by wire and email.

58.    The Walworth County Defendants Enterprise is an ongoing, continuing group or unit of persons and entities associated together for the common purpose of generating the fraudulent and phony appraisals of the real property at issue in this case.

59.    While the members of the Walworth County Enterprise participated in and are part of the enterprise, they also have an existence separate and distinct from the enterprise. The Walworth County Enterprise has a systematic linkage because there are contractual relationships, agreements, financial ties, and coordination of activities between Walworth County and the persons and/or entities procuring and preparing the fraudulent appraisals.

19

60.     Operating the Walworth County Enterprise according to policies and procedures developed and established by its Directors, Supervisors, executives, Walworth County controlled and directed the affairs of the Walworth County Enterprise and used the other members of the Walworth County Enterprise as instrumentalities to carry out the fraudulent scheme to fraudulently, systematically and uniformly produce false "appraisals" of properties in connection with it sale of tax delinquent properties.

61.     These policies and procedures established by Walworth County Defendants, Supervisors, executives, include refusing to utilize bona fide appraisers; and using appraisers who disregarded the appraisal "independence" requirements and manipulated the market values of subject properties; rewarding appraisers who produced manipulated appraisals; blacklisting, retaliating against, and firing appraisers who refused to engage in such corrupt conduct; requiring appraisers to rely upon information outside the relevant market to justify manipulated valuations in appraisals; and providing appraisers with false sales information and comparable to ensure the production of inflated appraisals and/or just simply manufacturing appraisals without any professional assistance.

## The Predicate Acts

62.     The Walworth County Enterprise's scheme to fraudulently, systematically and uniformly produce and  phony, manipulated or inflated "appraisals" of properties, which were performed with indifference towards the appraisals' accuracy, current market value, in connection with the advertising and sale of it tax delinquent properties was facilitated by the use of the United States Mail and wire. Indeed, the Defendants used the United States Mail (including the use of interstate carriers such as Federal Express) and the wires to submit representations concerning the manipulated appraisals, used the United States Mail and the

wires, 100's of times to submit the so-called "appraisals" to Plaintiffs (**Exhibit 1**), and used United States Mail and the wires to submit invitations to bid on Walworth County Tax Delinquent Properties, the scheme constitutes "racketeering activity" within the meaning of Title 18 United States Code section 1961(1), as acts of mail and wire fraud, under Title 18 United States Code sections 1341 and 1343.

63.     In violation of Title 18 United States Code sections 1341 and 1343, the Walworth County Enterprise utilized the mail and wire in furtherance of their scheme to defraud purchases of Walworth County Tax delinquent properties by obtaining money from them, based on sham, false appraised values of Tax Delinquent Property, using false or fraudulent pretenses of fake appraised values of tax delinquent properties.

64.     18 U.S.C. § 1343, the wire fraud statute invoked by 18 U.S.C. § 1961(1) as a predicate act, provides that "whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice."

65.     Between March 2016 and August, 2017, Walworth County, though its agents identified above, transmitted the pre-textual false Appraisals of Walworth County via U.S. mail, over the internet or similar carrier to Plaintiffs' offices in Oak Park, Illinois. Plaintiffs are informed and believe that in connection with the scheme, from its offices in Walworth County, Wisconsin sent, via U.S. Mail transmitted the advertisements to purchase Walworth Tax Delinquent Properties.

66. The Walworth County Enterprise's collective association and collective action in procuring and preparing fraudulent appraisals constitutes the RICO enterprise. Every member of the Walworth County Enterprise participated in the process of misrepresenting and concealing the fraudulent nature of the purported appraisals. The Walworth County Enterprise earned 100's thousands of dollars in wrongful profits as a result of foreclosing on tax delinquent properties and selling those properties for inflated market values over 300 times greater value than the tax deficiencies on the said foreclosed properties.

67. In perpetrating the fraudulent scheme, each member of the Walworth County Enterprise directly or indirectly through its county structure has designed and implemented a uniform scheme to create fraudulent appraisals at issue here. The Walworth County Enterprise's representations and concealments of their ordering, utilization and for so-called "appraisals," of tax delinquent property comprise one common, uniform nearly identical system of procedures used in virtually an identical way every day.

68. The Walworth County Enterprise has knowingly, intentionally or recklessly engaged in an ongoing pattern of racketeering under 18 U.S.C. § 1962(c) by committing the predicate acts of wire fraud within the meaning of 18 U.S.C. § 1343, by knowingly and intentionally implementing the scheme to misrepresent and conceal their statements about the preparation, use of "appraisals" of property that was foreclosed upon for back real estate taxes, which allowed the Walworth County Enterprise to reap unlawful profits.

69. By devising the scheme or artifice to defraud consumers as described herein, the Walworth County Enterprise transmitted or caused to be transmitted by means of "wire communication in interstate or foreign commerce, writings, signs, signals, [and] pictures," "for the purpose of executing such scheme or artifice," including by:

(i) Transmitting phony "appraisal" values of tax delinquent property; and

(ii) Transmitting e-mail communications relating to the process of determining, making or transmitting the phony property appraisals.

70.     Plaintiffs are informed and believe that, in addition to the conduct described above, the Walworth County Enterprise used the wires in conjunction with reaching their agreement to make false statements about their use for "appraisals" of the tax delinquent properties at issue here.

71.     Through the racketeering scheme described above, Defendants used the enterprise to improperly increase their profits to the detriment of consumers in the state of Wisconsin.

72.     The Walworth County Enterprise organized and implemented the scheme, and ensured it continued uninterrupted by concealing their use and otherwise manipulated "appraisals" from consumers, including Plaintiffs.

73.     The Walworth County Enterprise knew the scheme would defraud purchasers of tax delinquent properties, yet each member of the Walworth County Enterprise remained a participant despite the fraudulent nature of the enterprise. At any point while the scheme had been in place, any of the participants could have ended the scheme by abandoning the conspiracy and notifying the public and law enforcement authorities of its existence. Rather than stopping the scheme, however, the members of the Countrywide Enterprise deliberately chose to continue it, to the direct detriment of consumers such as Plaintiffs. Plaintiffs suffered injury resulting from the pattern of racketeering activity.

74.     Plaintiffs are direct victims of the Walworth County Enterprise's wrongful and unlawful conduct. Plaintiffs' injuries were direct, proximate, foreseeable and natural

consequences of Defendants' conduct. There are no independent factors that account for Plaintiffs' economic injuries, and the loss of money satisfies RICO's injury requirement.

75.     Plaintiffs, , are entitled to recover treble damages for the injuries they have sustained, according to proof, as well as restitution and costs or suit and reasonable attorneys' fees in accordance with 18 U.S.C. § 1964(c).

76.     As a direct and proximate result of the subject racketeering activities, Plaintiffs and members of the Class are entitled to an order, in accordance with 18 U.S.C. § 1964(a), enjoining and prohibiting the Walworth County Enterprise from further engaging in their unlawful conduct.

77.     Under the provisions of Section 1964(c) of RICO, members of the Walworth County Enterprise are jointly and severally liable to Plaintiffs for three times the damages that Plaintiffs have sustained, plus the costs of bringing this suit, including reasonable attorneys' fees.

## PRAYER FOR RELIEF

Plaintiffs, on behalf of themselves request the Court to enter judgment against Defendants, as follows:

A.      Appointing counsel for Plaintiff Michael Stoller, 26, an adult-child, a disabled person, under the Americans for Disability Act, (ADA) a "protected" person; and mentally in capacitated.

B.      Ordering that Defendants are financially responsible for notifying all Real Estate of the alleged conduct discussed herein;

C.      Awarding Plaintiffs compensatory damages in an amount according to proof at trial;

D.   Awarding restitution and disgorgement of Defendants' revenues and/or profits to Plaintiffs;

E.   Awarding Plaintiffs treble damages in an amount according to proof at trial;

F.   Awarding declaratory and injunctive relief as permitted by law or equity, including: enjoining Defendants from continuing the unlawful practices as set forth herein, and directing Defendants to identify, with Court supervision, victims of its conduct and pay them restitution and disgorgement of all monies acquired by Defendants by means of any act or practice declared by this Court to be wrongful; and

G.   Awarding interest on the monies wrongfully obtained from the date of collection through the date of entry of judgment in this action.

## SECOND CLAIM FOR RELIEF
## VIOLATION OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT,
## CONSPIRACY TO VIOLATE TITLE 18 UNITED STATES CODE SECTION 1962(C)
## (18 U.S.C. § 1962(D)

78.   Plaintiffs incorporate by reference in this claim for relief each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

79.   Plaintiffs bring this cause of action on behalf of themselves.

80.   As set forth above, in violation of Title 18 United States Code Section 1962(d), members of the Walworth County Enterprise conspired to violate the provisions of Title 18 United States Code section 1962(c).

25

81. As set forth above, Defendants, having directed and controlled the affairs of the Walworth County Enterprise, was aware of the nature and scope of the enterprise's unlawful scheme, and they agreed to participate in it.

82. As a direct and proximate result, Plaintiffs have been injured in their business or property by the predicate acts which make up the Walworth County Enterprise's pattern of racketeering activity in that they created and manufactured sham "appraisals" of their tax delinquent properties.

**WHEREFORE** Plaintiffs, on behalf of themselves, request the Court to enter judgment against Defendants, as follows:

A. Appointing counsel for Plaintiff Michael Stoller, 26, an adult-child, a disabled person, under the Americans for Disability Act, (ADA) a "protected" person;

B. Ordering that Defendants are financially responsible for notifying all Real Estate purchasers of Walworth County Tax Delinquent property of the alleged conduct charged herein;

C. Awarding Plaintiffs compensatory damages in an amount according to proof at trial;

D. Awarding restitution and disgorgement of Defendants' revenues and/or profits to Plaintiffs;

E. Awarding Plaintiffs treble damages in an amount according to proof at trial;

F. Awarding declaratory and injunctive relief as permitted by law or equity, including: enjoining Defendants from continuing the unlawful practices as set forth herein, and directing Defendants to identify, with Court supervision, victims of its conduct and pay them restitution and disgorgement of all monies acquired by Defendants by means of any act or practice declared by this Court to be wrongful; and

26

G.    Awarding interest on the monies wrongfully obtained from the date of collection through the date of entry of judgment in this action.

## THIRD CLAIM FOR RELIEF
## VIOLATION OF UNFAIR COMPETITION LAW

83.    Plaintiffs incorporate by reference in this claim for relief each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

84.    Plaintiffs bring this cause of action on behalf of themselves.

85.    Wisconsin law prohibits any unlawful, unfair or fraudulent business act or practice. For the reasons described above, Defendants have engaged in unlawful, unfair, or fraudulent business acts or practices in violation of Wisconsin State law.

86.    Through the scheme, Defendants have (1) directly and indirectly employed a scheme, device and artifice to defraud and mislead purchasers of Walworth County Tax Delinquent properties and defraud any person; (2) directly and indirectly engaged in an unfair and deceptive act towards a person; (3) directly and indirectly obtained property by fraud and misrepresentation; and (4) knowingly made published and disseminated false, deceptive and misleading information.

87.    On information and belief, the actions and underlying decisions of Defendants, alleged herein emanated from and occurred within the State of Wisconsin. Wisconsin law applies to the claims of. Defendants planned and implemented their wrongful scheme in Wisconsin and the wrongful acts emanated from Walworth County offices. As such, it is appropriate to apply Wisconsin law.

88.    Defendants' conduct described herein constitutes an unlawful business practice within the meaning of Wisconsin deceptive trade practice act. In that the conduct violates, among

27

other laws, the Racketeering Influenced and Corrupt Practice Act ("RICO"), and the common law of fraud and unjust enrichment. Specifically, as alleged herein, Countrywide has:

(a)   Violated 18 U.S.C. § 1962(c) by conducting the affairs of certain association-in-fact enterprises identified herein, the affairs of which affected interested commerce through a pattern of racketeering activity, and engaged in a conspiracy in violation of

18 U.S.C. § 1962(d);

(b)   Violated Title XI of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA") by influencing, coercing and manipulating the appraisal process;

(c)   Violated the common law governing unjust enrichment by receiving a benefit from the purchases of tax delinquent properties in the form of payments, which unreasonable, not for the actual values of the tax delinquent properties and made in violation of federal and common law.

89.   Defendants' conduct as described herein violates not only the "unlawful" prong of the UNFAIR COMPETITION LAW (UCL), but also constitutes a violation of the UCL's "unfair" prong. Defendants' conduct offends public policy and is immoral, unethical, oppressive, unscrupulous and substantially injurious to consumers. Any justification for Defendants' practices is outweighed by the consequences and harm to Plaintiffs. There were reasonable alternatives available to Defendants to further Defendants' legitimate business interests, other than the conduct described herein.

90.   Plaintiffs have suffered injury-in-fact and have lost money or property as a result of Defendants' unlawful, unfair and/or deceptive business practices. Each of Defendants'

28

omissions was material to Plaintiffs in creating the fraudulent, manipulated and inflated "appraisal" values at issue. Defendants' profited from their fraudulent tax foreclosure business and sale of tax delinquent properties by creating sham appraisals rather than to provide an honest assessment of the tax delinquent property values.

91.    Plaintiffs seek restitution and disgorgement of profits realized by Defendants as a result of their unfair, unlawful and/or deceptive practices.

92.    Defendants' conduct was also "fraudulent, misleading, or likely to deceive the public" within the meaning of Wisconsin Deceptive Trade Practices Act, by engaging in an ongoing enterprise to create sham appraisals, Defendants distorted it tax delinquent property values throughout the County of Walworth since the valuations created by Defendants' appraisals were determined by Defendants' deceitful business practices rather than underlying economic forces affecting the real estate market.

93.    Plaintiffs have been injured in fact and suffered a loss of money or property as a result of Defendants' fraudulent, unlawful, and unfair business practices.

94.    Defendants have thus engaged in unlawful, unfair, and fraudulent business acts entitling Plaintiffs to judgment and equitable relief against Defendants, as set forth in the Prayer for Relief.

95.    Additionally, Plaintiffs seek an order requiring Defendants to immediately cease such acts of unlawful, unfair, and fraudulent business practices, and requiring Defendants to correct their actions.

96.    The Plaintiffs have suffered damages. Plaintiffs seek restitution from Defendants. Proximate cause of injury to the Plaintiffs was foreseeable and the Plaintiffs have suffered and are still suffering damages resulting from the unlawful, horrendous behavior of the Defendants.

**WHEREFORE** Plaintiffs, on behalf of themselves, request the Court to enter judgment against Defendants, as follows:

A. Appointing counsel for Plaintiff Michael Stoller, 26, an adult-child, a disabled person, under the Americans for Disability Act, (ADA) a "protected" person;

B. Ordering that Defendants are financially responsible for notifying all Real Estate purchasers of Walworth County Tax Delinquent property of the alleged conduct charged herein;

C. Awarding Plaintiffs compensatory damages in an amount according to proof at trial;

D. Awarding restitution and disgorgement of Defendants' revenues and/or profits to Plaintiffs;

E. Awarding Plaintiffs treble damages in an amount according to proof at trial;

F. Awarding declaratory and injunctive relief as permitted by law or equity, including: enjoining Defendants from continuing the unlawful practices as set forth herein, and directing Defendants *sue sponte* to identify, with Court supervision, victims of its conduct and pay them restitution and disgorgement of all monies acquired by Defendants by means of any act or practice declared by this Court to be wrongful; and

G. Awarding interest on the monies wrongfully obtained from the date of collection through the date of entry of judgment in this action. Awarding attorney fees and costs.

### FOURTH CLAIM FOR RELIEF
### UNJUST ENRICHMENT

97. Plaintiffs incorporate by reference in this claim for relief each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

98. Plaintiffs bring this cause of action on behalf of themselves.

99. By their wrongful acts, Defendants were unjustly enriched at the expense of Plaintiffs.

100. Defendants knowingly, fraudulently, systematically, and uniformly procured and prepared manipulated and/or inflated appraisals on the home loans originated by Countrywide.

101. The Defendants has 'unjustly retained a benefit to the plaintiff's detriment and the defendant's 'retention of the benefit violates the fundamental principles of justice, equity, and good conscience.'

102. Thus, Plaintiffs were unjustly deprived of purchasing the subject property for the Tax Delinquency, back due taxes and/or fair market value.

103. It would be inequitable and unconscionable for Defendants to retain the profit, benefit and other compensation they obtained from their fraudulent, deceptive, and misleading conduct alleged herein.

104. The Plaintiffs have suffered damages. Plaintiffs seek restitution from Defendants, and seek an order of this Court disgorging all profits, benefits, and other compensation obtained by Defendants from their wrongful conduct.

**WHEREFORE** Plaintiffs, on behalf of themselves and all others similarly situated, request the Court to enter judgment against Defendants, as follows:

A. Appointing counsel for Plaintiff Michael Stoller, 26, an adult-child, a disabled person, under the Americans for Disability Act, (ADA) a "protected" person;

B. Ordering that Defendants are financially responsible for notifying all Real Estate purchasers of Walworth County Tax Delinquent property of the alleged conduct charged herein

C. Awarding Plaintiffs compensatory damages in an amount according to proof at trial;

D.       Awarding restitution and disgorgement of Defendants' revenues and/or profits to Plaintiffs;

E.       Awarding Plaintiffs treble damages in an amount according to proof at trial;

F.       Awarding declaratory and injunctive relief as permitted by law or equity, including: enjoining Defendants from continuing the unlawful practices as set forth herein, and directing Defendants *sue sponte* to identify, with Court supervision, victims of its conduct and pay them restitution and disgorgement of all monies acquired by Defendants by means of any act or practice declared by this Court to be wrongful; and

G.       Awarding interest on the monies wrongfully obtained from the date of collection through the date of entry of judgment in this action.

## FIFTH CLAIM FOR RELIEF

**Wis. 100.264     Violations against elderly or disabled persons.**

105.     Plaintiffs incorporate by reference in this claim for relief each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

106.     Plaintiffs bring this cause of action on behalf of themselves.

107.     By their wrongful acts, Defendants committed their wrongs against "elderly and disabled persons, the plaintiffs.

108.     Plaintiff Christopher Stoller, "elderly person" 68, who has major life activity limitations, walking, performing manual tasks and being able to be gainfully employed.

109.     Michael Stoller, 26 an adult child, on Social Security Disability, designated a mentally disabled person, from birth, the said mental impairment substantially effecting his major life activities. Michael Stoller is unable to be gainfully employed.

32

110.    The defendants knew or should have known that the defendant's alleged conduct herein was perpetrated against an elderly person and a disabled person.

111.    Defendants' conduct caused physical and emotional damage and economic loss to the Plaintiffs.

112.    The said Plaintiffs are more likely to suffer the loss than other persons due to their age, poor health, impaired understanding or restricted mobility.

113.    Proximate cause of injury to the Plaintiffs was foreseeable and the Plaintiffs have suffered and are still suffering damages resulting from the unlawful, horrendous behavior of the Defendants.

**WHEREFORE** Plaintiffs, on behalf of themselves and all others similarly situated, request the Court to enter judgment against Defendants, as follows:

A.    Appointing counsel for Plaintiff Michael Stoller, 26, an adult-child, a disabled person, under the Americans for Disability Act, (ADA) a "protected" person;

B.    Ordering that Defendants are financially responsible for notifying all Real Estate purchasers of Walworth County Tax Delinquent property of the alleged conduct charged herein;

C.    Awarding Plaintiffs compensatory damages in an amount according to proof at trial;

D.    Awarding restitution and disgorgement of Defendants' revenues and/or profits to Plaintiffs;

E.    Awarding Plaintiffs treble damages in an amount according to proof at trial;

F.    Awarding declaratory and injunctive relief as permitted by law or equity, including: enjoining Defendants from continuing the unlawful practices as set forth herein, and directing Defendants to identify, with Court supervision, victims of its conduct and pay them

restitution and disgorgement of all monies acquired by Defendants by means of any act or practice declared by this Court to be wrongful; and

G.     Awarding interest on the monies wrongfully obtained from the date of collection through the date of entry of judgment in this action. Attorney fees and costs.

## SIXTH CLAIM FOR RELIEF



Wis. 100.18(1) (It generally provides that no person or entity intending to sell, distribute, increase the consumption of, or in any way² dispose of any real estate, merchandise, securities, employment, or service or intending to induce the public to enter into any contract relating thereto, may make any untrue, deceptive, or misleading advertisements, announcements, statements, or representations in conjunction with such transaction.)

114.     Plaintiffs incorporate by reference in this claim for relief each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

115.     Plaintiffs bring this cause of action on behalf of themselves.

116.     By Defendants' wrongful acts, Plaintiffs have been damaged.

117.     Defendants made deceptive, misleading advertisements, announcements, statements and representations in conjunction with their sale of tax delinquent properties (**Exhibit 1, 3**).

118.     Proximate cause of injury to the Plaintiffs was foreseeable and the Plaintiffs have suffered and are still suffering damages resulting from the unlawful, horrendous behavior of the Defendants.

**WHEREFORE** Plaintiffs, on behalf of themselves and all others similarly situated, request the Court to enter judgment against Defendants, as follows:

A.     Appointing counsel for Plaintiff Michael Stoller, 26, an adult-child, a disabled person, under the Americans for Disability Act, (ADA) a "protected" person;

34

B.      Ordering that Defendants are financially responsible for notifying all Real Estate purchasers of Walworth County Tax Delinquent property of the alleged conduct charged herein;;

C.      Awarding Plaintiffs compensatory damages in an amount according to proof at trial;

D.      Awarding restitution and disgorgement of Defendants' revenues and/or profits to Plaintiffs;

E.      Awarding Plaintiffs treble damages in an amount according to proof at trial;

F.      Awarding declaratory and injunctive relief as permitted by law or equity, including: enjoining Defendants from continuing the unlawful practices as set forth herein, and directing Defendants to identify, with Court supervision, victims of its conduct and pay them restitution and disgorgement of all monies acquired by Defendants by means of any act or practice declared by this Court to be wrongful; and

G.      Awarding interest on the monies wrongfully obtained from the date of collection through the date of entry of judgment in this action. Attorney fees and costs.

## SEVENTH CLAIM FOR RELIEF
## BREACH OF FUDICARY DUTY[20]

---

[20] The court of appeals concluded that it was bound by language *in Beloit Liquidating Trust v. Grade,* 2004 WI 39, 270 Wis.2d 356, 677 N.W.2d 298, stating that breach of fiduciary duty is an intentional tort governed by the two-year statute of limitations in sec. 893.57.A breach of the fiduciary duty of loyalty is an intentional tort subject to the statute of limitations in this section; *Zastrow v. Journal Communications, Inc.,* 2006 WI 72, 291 Wis. 2d 426, 718 N.W.2d 51, 04-0276.The elements for a breach of a fiduciary duty are: (1) the defendant owes a fiduciary duty to the plaintiff, (2) the defendant breached that duty, and (3) the defendant's breach of the duty caused the Plaintiffs' damages; *Berner Cheese Corp. v. Krug,* 2008 WI 95, ¶40, 312 Wis. 2d 251, 752 N.W.2d 800.

35

119. Plaintiffs incorporate by reference in this claim for relief each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

120. Plaintiffs bring this cause of action on behalf of themselves.

121. By Defendants' wrongful acts, Plaintiffs have been damaged.

122. Walworth County Defendants owed a fiduciary duty to the Plaintiffs.

123. Walworth County Defendants had an obligation to its citizens not to create fraudulent, misleading, sham appraisals of their tax delinquent properties when advertising them for sale to its citizens.

124. Walworth County Defendants breached their fiduciary duty to the Plaintiff.

125. The Defendants breach of duty caused the plaintiffs' damages.

**WHEREFORE** Plaintiffs, on behalf of themselves and all others similarly situated, request the Court to enter judgment against Defendants, as follows:

A. Appointing counsel for Plaintiff Michael Stoller, 26, an adult-child, a disabled person, under the Americans for Disability Act, (ADA) a "protected" person;

B. Ordering that Defendants are financially responsible for notifying all Real Estate purchasers of Walworth County Tax Delinquent property of the alleged conduct charged herein;all;

C. Awarding Plaintiffs compensatory damages in an amount according to proof at trial;

D. Awarding restitution and disgorgement of Defendants' revenues and/or profits to Plaintiffs;

E. Awarding Plaintiffs treble damages in an amount according to proof at trial;

36

F.    Awarding declaratory and injunctive relief as permitted by law or equity, including: enjoining Defendants from continuing the unlawful practices as set forth herein, and directing Defendants to identify, with Court supervision, victims of its conduct and pay them restitution and disgorgement of all monies acquired by Defendants by means of any act or practice declared by this Court to be wrongful; and

G.    Awarding interest on the monies wrongfully obtained from the date of collection through the date of entry of judgment in this action.Attorney fees and costs.

## EIGHT CLAIM FOR RELIEF
### Conspiracy[21], Aiding and Abetting[22]

126.    Plaintiffs incorporate by reference in this claim for relief each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

127.    Plaintiffs bring this cause of action on behalf of themselves.

128.    By Defendants wrongful acts, Plaintiffs have been damaged.

129.    The Walworth County and unknown attorneys, agents, officers, directors, JOHN

---

[21] In Wisconsin civil conspiracy has been defined as a combination of two or more persons by some concerted action to accomplish some unlawful purpose or to accomplish by unlawful means some purpose not in itself unlawful. *Mendelson v. Blatz Brewing Co.* (1960), 9 Wis. 2d 487, 490, 101 N.W.2d 805 "For two or more persons to conspire to do an act to the injury of another which one person acting alone might lawfully do constitutes in this state a legal wrong." *Judevine v. Benzies-Montanye Fuel & Wholesale Co.* (1936), 222 Wis. 512, 524, 269 N.W. 295.

[22] W*inslow v. Brown* 125 Wis. 2d 327 (1985), 371 N.W.2d 417 In *State v. Asfoor,* 75 Wis. 2d 411, 428-29, 249 N.W.2d 529, 536-37 (1977), Wisconsin supreme court stated that one may aid and abet an intentional act that is not intended to injure but that creates a foreseeable risk of injury. The same reasoning applies in a civil action for damages.

37

DOES 1-10, owed a duty to the Plaintiffs and they failed on all accounts.

130. Defendants were aware of the duty that all of the Defendants owed the Plaintiffs and yet they all conspired to defraud and injury to the Plaintiffs. By the advertising and promotion of Walworth County delinquent real estate tax filings with inflated, sham appraisals.

131. Defendants knew or should have known that their appraisals of the tax delinquent properties were inflated values based upon sham appraisal. Treasurer Defendant, Valerie Etzel, aided and abetted, directly conspired together with the other Walworth County Defendants injury the Plaintiffs in making the said misrepresentations and/or defrauding the Plaintiff and all of the residents of Walworth County with the creation and implementation of her unlawful 2017 "Treasurer in Rem Tax Foreclosures" (**Exhibit 1**).

132. Proximate cause of injury to the Plaintiffs was foreseeable and the Plaintiffs have suffered and are still suffering damages resulting from the horrendous discrimination and behavior of the Defendants.

**WHEREFORE** Plaintiffs, on behalf of themselves and all others similarly situated, request the Court to enter judgment against Defendants, as follows:

A. Appointing counsel for Plaintiff Michael Stoller, 26, an adult-child, a disabled person, under the Americans for Disability Act, (ADA) a "protected" person;

B. Ordering that Defendants are financially responsible for notifying all Tax Delinquent Real Estate Purchasers of the alleged misconduct conduct charged herein;

C. Awarding Plaintiffs compensatory damages in an amount according to proof at trial;

D. Awarding restitution and disgorgement of Defendants' revenues and/or profits to Plaintiffs;

Case 2:17-cv-01349-JPS   Filed 10/02/17   Page 38 of 39   Document 1

E.   Awarding Plaintiffs treble damages in an amount according to proof at trial;

F.   Awarding declaratory and injunctive relief as permitted by law or equity, including: enjoining Defendants from continuing the unlawful practices as set forth herein, and directing Defendants to identify, with Court supervision, victims of its conduct and pay them restitution and disgorgement of all monies acquired by Defendants by means of any act or practice declared by this Court to be wrongful; and

G.   Awarding interest on the monies wrongfully obtained from the date of collection through the date of entry of judgment in this action. Attorney fees and costs.

Respectfully submitted

michael Stoller

Michael Stoller

Christopher Stoller,
415 Wesley #1
Oak Park, IL 60303
(773) 746-3163
cns40@hotmail.com