# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

CHRISTOPHER STOLLER, MICHAEL STOLLER, and LEO STOLLER,

|                                  | Plaintiffs, |
| :------------------------------- | ----------: |

v.

Case No. 17-CV-1349-JPS

WALWORTH COUNTY, VALERIE ETZEL, RANDY TIMMS, WILLIAM NOREM, TIM BRELLENTHIN, PAUL YVARRA, CHARLENE STAPLES, KATHY INGERSOLL, DAVID WEBER, DANIEL G. KILKENNY, SUSAN M. PRUESSING, KENNETH H. MONROE, NANCY RUSSELL, LAKE COMO WISCONSIN SANITARY DISTRICT, GARY DUFFY, RON SOJKA, JOE ROBERTS, RICH SCHOLZE, DONALD J. CROWLEY, DIANA S. CROWLEY, DELEVAN LAKE ASSEMBLY, MICHAEL CONNOLLY, STEVEN SCHAMIDT, HENRY RACKIEWICZ, BILL WINTERS, ANTHONY STEVEN EVERS, STATE OF WISCONSIN, and JOHN DOES,

**ORDER**

Defendants.

## 1.   BACKGROUND

On October 2, 2017, Plaintiffs Christopher Stoller[1] and Michael Stoller filed a complaint against a group of various defendants who are tied

---

[1]On December 23, 2019, the Seventh Circuit Court of Appeals issued an order directing "the clerks of all federal courts in this circuit . . . to return unfiled any papers submitted either directly or indirectly" by Christopher Stoller or on his

to Walworth County, Wisconsin (collectively, the "Walworth County Defendants"). (Docket #1). The Court dismissed Plaintiffs' action and *only* Christopher Stoller appealed. (Docket #7, #9). The United States Court of Appeals for the Seventh Circuit vacated this Court's judgment and remanded this case with instructions to permit Christopher Stoller to file an amended complaint. (Docket #17); *Stoller v. Walworth Cty.*, 770 F. App'x 762 (7th Cir. 2019). Christopher Stoller *and* Michael Stoller filed an amended complaint on August 14, 2019. (Docket #22). This first amended complaint added a plethora of additional defendants. *Id.* at 1. Approximately two weeks later, a "Corrected Amended Complaint" was filed. (Docket #23). Then, on November 12, 2019, Christopher Stoller and Michael Stoller filed what has been docketed as the "Proposed Second Corrected Amended Complaint,"[2] (Docket #36), which added Leo Stoller as a plaintiff.[3]

---

behalf. *Wilmington Trust, Nat'l Ass'n v. Christopher Stoller*, No. 19-2561; *Wilmington Trust, Nat'l Ass'n v. Christopher Stoller*, No. 19-2591; *Christopher Stoller v. Altisource Residential L.P.*, No. 19-2923. Notwithstanding this order, Christopher Stoller filed several motions in this case. Because the various defendants have spent time, money, and effort both responding to and filing motions, the Court addresses the pending motions and ultimately dismisses this case in its entirety.

[2]Neither the "Corrected Amended Complaint," (Docket #23), nor the "Proposed Second Corrected Amended Complaint," (Docket #36), are procedurally proper. *See* Fed. R. Civ. P. 15(a) ("A party may amend its pleading once as a matter of course . . . . In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave."). However, because the defendants have responded, in some fashion, to the Proposed Second Corrected Amended Complaint, for purposes of expeditiously resolving the motions before the Court, the Court shall treat the Proposed Second Corrected Amended Complaint as the operative complaint in this case.

[3]The Court doubts that either Michael Stoller or Leo Stoller are proper plaintiffs in this case because it is unlikely that they have standing to sue any of the defendants. To establish Article III standing, Plaintiffs must allege that the defendants caused them an injury in fact that can be remedied by the Court. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). As discussed in Section 2.1. *infra*,

The general gist of Plaintiffs' complaint is that Wisconsin Statutes section 75.69, "Sale of tax delinquent real estate," is unconstitutional, and as a result of this alleged unconstitutionality, several defendants were able to "generat[e] the fraudulent and phony appraisals" of real property. (Docket #36 at 1–2, 25). Plaintiffs also allege that certain defendants were obligated, and failed, to provide Christopher Stoller with sewer and water services for a different piece of property that he already owned. *Id.* at 47–49. Although Plaintiffs assert that all named defendants are a part of a criminal enterprise, Plaintiffs seek different forms of relief from different defendants. *See id.* at 24–50. Because there are almost as many pending motions as there are defendants in this case, the Court will expound on the relevant facts as it addresses each dispositive motion.

## 2. THE WALWORTH COUNTY DEFENDANTS

### 2.1. Relevant Facts[4]

The Walworth County Defendants include Walworth County, Valerie Etzel ("Etzel"), Randy Timms, William Norem, Tim Brellenthin, Paul Yvarra, Charlene Staples, Kathy Ingersoll, David Weber, Daniel Kilkenny, Susan Pruessing, Kenneth Monroe, and Nancy Russell. Etzel is

---

neither Leo Stoller nor Michael Stoller owned property in Walworth County, nor submitted bids for the properties at issue in this case. However, because the Court can expeditiously dispose of all of Plaintiffs' claims against all Defendants, the Court does not address this potential standing issue.

[4]Although Plaintiffs did not submit their own proposed findings of fact, nor object to the Walworth County Defendants' Proposed Findings of Fact, (Docket #77), Plaintiffs did submit a signed complaint, (Docket #36). Accordingly, the facts below are taken from Defendants' Proposed Findings of Fact, (Docket #77), to the extent they are supported by admissible evidence, and the operative sworn complaint, (Docket #36). *See Ford v. Wilson*, 90 F.3d 246, 246–47 (7th Cir. 1996) (The court can construe a sworn complaint as an affidavit at the summary judgment stage.).

the Treasurer of Walworth County and she held that position during the time period relevant to this case. The other individuals were members of the Walworth County Board of Supervisors (the "Board of Supervisors") in 2017. At that time, Nancy Russell, Daniel Kilkenny, Kathy Ingersoll, Paul Yvarra, and William Norem were also a part of the Walworth County Finance Committee (the "Finance Committee").

As Treasurer, Etzel was responsible for managing activities related to tax appraisals and sales, which she carried out in accordance with the statutory process outlined in Wisconsin Statutes section 75.69(1). If a county acquires tax delinquent real estate, section 75.69(1) requires that the county advertise the sale and appraised value of the applicable real estate in accordance with Wisconsin Statutes chapter 985. Section 75.69 explicitly states that "[a]ny county may accept the bid most advantageous to it but, at the first attempt to sell the property, every bid less than the appraised value of the property shall be rejected." Subsection 75.69(1) defines "appraised value" as "the value determined, at the discretion of the county board, by the county board, a committee designated by the county board, or a certified appraiser, as defined in s. 458.01(7)."

In July 2017, Etzel prepared a report, (Docket #65-1), which showed that Walworth County took ownership of various tax delinquent properties. Walworth County has procedures both for establishing the value of foreclosed property and for the bidding process. The property appraisals typically are based upon the property's assessed value, taxes, and fees owed. After obtaining foreclosed properties, Walworth County notifies adjacent landowners in the event those landowners have any interest in bidding on the adjacent, foreclosed property.

Etzel presented her report to the Walworth County Finance Committee in July 2017 and the Committee approved her recommendations. Her report encompassed the three parcels at issue in this case: Tax Key Nos. JLCB 00986 (appraised value of $11,400); JLCB 02054 (appraised value of $11,400); and FDLA 00208 (appraised value of $10,650). (Docket #65-1 at 1). According to Etzel's report, these parcels were all appraised at less than fifty percent of the assessed fair market value. *Id.*

In accordance with the County's bidding process, Etzel notified Christopher Stoller, via letter, that Walworth County had taken title to parcel Tax Key No. JLCB 00986 and that the land's appraised value was $11,400. (Docket #65-4). Parcel Tax Key No. JLCB 00986 is adjacent to Christopher Stoller's property; according to tax records, neither Leo Stoller nor Michael Stoller owned any property in Walworth County in 2017. Plaintiffs state that this lot "has value only to the Plaintiff because the lot borders the Plaintiff's property" and "has a possible value of $2,500.00, only to the adjacent property holder, the Plaintiffs." (Docket #36 at 21). They argue, without providing any evidence, that the appraised value of $11,400 is incorrect and illegitimate. *Id.* However, Plaintiffs do not provide any support for their valuation other than a statement that "the delinquent real estate taxes on the lot . . . were about $2,700.00." *Id.* at 22.

The County's established bidding instructions made clear that "[e]arnest money of 20% of the bid [amount] is required upon bid submission," and that "[p]ursuant to Wisconsin State Statute 75.69, at the first attempt to sell the property, the county must reject every bid that is less than the appraised value of the property." (Docket #36-1 at 34, #65-2). On August 24, 2017, Christopher Stoller submitted bids of $2,500 for each of the

three aforementioned parcels. (Docket #65-5). However, he failed to include the required earnest money for any of the three bids.

At their September 14, 2017 meeting, (Docket #65-6 at 2), the Walworth County Finance Committee rejected each of Christopher Stoller's bids against the backdrop of the "2017 County Owned Property" report, (Docket#65-7). Christopher Stoller received three letters, dated September 14, 2017, informing him that his bids were not accepted because they were less than the appraised value and failed to include the required earnest money deposit. (Docket #65-8). Aside from the written communications from the Treasurer's office to Christopher Stoller, neither Etzel, nor the Board of Supervisors, nor the Finance Committee knew of or had any discussions with Plaintiffs. Further, none of the Walworth County Defendants knew any of Plaintiffs' ages or medical conditions.

Plaintiffs assert eight claims for relief as to the Walworth County Defendants. On November 20, 2019, the Walworth County Defendants answered the Proposed Second Corrected Amended Complaint. (Docket #39). On February 25, 2020, the Walworth County Defendants filed a motion for judgment on the pleadings and for summary judgment. (Docket #62, #66, #78). Plaintiffs had until March 17, 2020 to respond to this motion; however, they did not do so. Instead, Plaintiffs have filed several motions in an effort to disqualify the Walworth County Defendants' counsel. *See, e.g.*, (Docket #88, #113, #130).

### 2.2. Legal Standard

The Walworth County Defendants seek both judgment on the pleadings or, in the alternative, summary judgment. Because the Court is obliged to consider materials outside of the pleadings, the Court will analyze these motions under the rubric of summary judgment, as it must

pursuant to Rule 12(d).[5] *Brownmark Films, LLC v. Comedy Partners*, 800 F. Supp. 2d 991, 998 (E.D. Wis. 2011). ("Ordinarily, courts may not rely upon materials outside of the pleadings when considering a motion to dismiss . . . without converting the motion to one for summary judgment.") (citing Fed. R. Civ. P. 12(d)).

Pursuant to Rule 56, the Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Boss v. Castro*, 816 F.3d 910, 916 (7th Cir. 2016). A fact is "material" if it "might affect the outcome of the suit" under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The Court construes all facts and reasonable inferences in the light most favorable to the non-movant. *Bridge v. New Holland Logansport, Inc.*, 815 F.3d 356, 360 (7th Cir. 2016).

### 2.3. Analysis

#### 2.3.1. First Claim for Relief

Plaintiffs allege that the Walworth County Defendants violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"), specifically 18 U.S.C. § 1962(c). Per § 1962(c):

> [i]t shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such

---

[5]"If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d).

Case 2:17-cv-01349-JPS   Filed 07/02/20   Page 7 of 29   Document 143

enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

To establish a cause of action under RICO, a plaintiff must plead "(1) an injury in its business or property (2) by reason of (3) the defendants' violation of section 1962." *DeGuelle v. Camilli*, 664 F.3d 192, 198 (7th Cir. 2011). To prove a violation of § 1962(c) the plaintiff must prove "(1) conduct (2) of an enterprise (3) through a pattern of racketeering activity." *United States v. Shamah*, 624 F.3d 449, 454 (7th Cir. 2010).

According to Plaintiffs' complaint, the Walworth County Defendants engaged in wire and mail fraud, which are two types of "racketeering activities" as defined by 18 U.S.C. § 1961(1). Plaintiffs "must show a triable issue of fact on the elements" of mail or wire fraud, which means that they must show: (1) the defendants' participation in a scheme to defraud; (2) the defendants' intent to defraud; and (3) the defendants' use of the mail or interstate wire in furtherance of the scheme to defraud. *Corley v. Rosewood Care Ctr., Inc. of Peoria*, 388 F.3d 990, 1005 (7th Cir. 2004); *see also United States v. Britton,* 289 F.3d 976, 981 (7th Cir. 2002) (elements of mail fraud); *United States v. Turner*, 551 F.3d 657, 664 (7th Cir. 2008) (elements of wire fraud). The words "to defraud" mean "wronging one in his property rights by dishonest methods or schemes" and "usually signify the deprivation of something of value by trick, deceit, chicane or overreaching." *Corley*, 388 F.3d at 1005 (quotation omitted).

There are no genuine disputes of material fact with regard to whether the Walworth County Defendants engaged in a pattern—let alone a single act— of racketeering activity. The evidence before the Court amply demonstrates that Etzel's acts as Treasurer, as well as the Finance Committee's actions, were not taken as part of any scheme or attempt to

defraud, but rather were in full accord with Wisconsin Statutes section 75.69.

The Court notes that *even if* there was a genuine issue of material fact as to whether the defendants engaged in a pattern of racketeering activity, Plaintiffs cannot establish a cause of action under RICO. To do so, Plaintiffs must plead injury in business or property by reason of the Walworth County Defendants' actions. *DeGuelle*, 664 F.3d at 198. Christopher Stoller's alleged injury is that he did not acquire the three aforementioned parcels. Assuming, without determining, that this constitutes an injury, this injury was not caused by the Walworth County Defendants. Christopher Stoller bid approximately one-third of the appraised value on each of the properties he was interested in and also failed to submit the earnest money deposit. If his injury is that he did not take title to this property, he only has himself to blame. Plaintiffs' 18 U.S.C. § 1962(c) claim will be dismissed.

### 2.3.2. Second Claim for Relief

Although unclear, it appears that Plaintiffs also allege that the Walworth County Defendants violated 18 U.S.C. § 1962(d). Per § 1962, it is "unlawful for any person to conspire to violate any of the provisions of [§ 1962(c)]." To state a viable § 1962(d) claim, Plaintiffs "must allege (1) that each defendant agreed to maintain an interest in or control of an enterprise or to participate in the affairs of an enterprise through a pattern of racketeering activity and (2) that each defendant further agreed that someone would commit at least two predicate acts to accomplish those goals." *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 732 (7th Cir. 1998) (footnote omitted).

In one part of Plaintiffs' complaint, Plaintiffs list all of the named defendants as "Members of the Enterprise," while in another, Plaintiffs

Case 2:17-cv-01349-JPS   Filed 07/02/20   Page 9 of 29   Document 143

state that the "RICO enterprise" includes only Walworth County and the Walworth County Defendants. (Docket #36 at 10–12, 24). Regardless, there are no genuine issues of material fact. Assuming that any configuration of defendants made up an enterprise, there is no evidence in the record of any agreements to participate in a pattern of racketeering activity. There is also no evidence that each defendant agreed that someone would engage in fraudulent, predicate acts. Etzel independently prepared a report of appraised, tax delinquent properties. Her dealings with the Finance Committee involved attending two meetings, one in July and another in September of 2017. Her actions at those meetings comported with the requirements of Wisconsin Statutes section 75.69. Plaintiffs have not proffered any evidence to the contrary. Further, Christopher Stoller's failure to bid the appropriate amount and his failure to submit the earnest money deposits are the reasons for his alleged injury. Therefore, Plaintiffs' § 1962(d) claim will be dismissed.

### 2.3.3.  Third Claim for Relief[6]

Plaintiffs claim that the Walworth County Defendants violated the state unfair competition law. The Court assumes that this is in reference to Wisconsin Statutes section 100.20(1), which states that "[u]nfair methods of competition in business and unfair trade practices in business are hereby prohibited." Notably, "no private cause of action exists under § 100.20, except for violation of an order issued by the Department [of Agriculture,

---

[6]Plaintiffs' third through eighth claims for relief allege Wisconsin state law claims against the Walworth County Defendants. The Walworth County Defendants argue that these claims are precluded due to state law immunity and Plaintiffs' failure to comply with the notice requirements provided in Wisconsin Statutes section 893.80(1d). Because Plaintiffs' state law claims fail as a matter of law, the Court does not address questions of immunity or notice.

Trade and Consumer Protection] under [section 100.20]." *Emergency One, Inc. v. Waterous Co., Inc.*, 23 F. Supp. 2d 959, 971 (E.D. Wis. 1998) (citing section 100.20(5)). There is no evidence in the record of an order from the Department of Agriculture, Trade and Consumer Protection to the Walworth County Defendants, nor is there evidence of the Walworth County Defendants violating the same. Therefore, Plaintiffs' third claim for relief is wholly without merit and will be dismissed.

### 2.3.4. Fourth Claim for Relief

Plaintiffs claim that the Walworth County Defendants have been unjustly enriched. To prevail, Plaintiffs must prove three elements: "(1) a benefit conferred upon the defendant by the plaintiff, (2) appreciation by the defendant of the fact of such benefit, (3) acceptance and retention by the defendant of the benefit, under circumstances such that it would be inequitable to retain the benefit without payment of the value thereof." *Seegers v. Sprague*, 236 N.W.2d 227, 230 (Wis. 1975) (citation omitted). Because there is no evidence that Plaintiffs conferred a benefit—monetary or otherwise—on the Walworth County Defendants, Plaintiffs' unjust enrichment claim fails as a matter of law. Plaintiffs' fourth claim for relief will be dismissed.

### 2.3.5. Fifth Claim for Relief

Plaintiffs claim that the Walworth County Defendants committed violations against elderly or disabled persons under Wisconsin Statutes section 100.264. Pursuant to section 100.264(2), "[i]f a fine or forfeiture is imposed on a person" for violating any of the state statutes enumerated therein, "the person shall be subject to a supplemental forfeiture . . . for that violation if the conduct by the defendant, for which the violation was imposed, was perpetrated against an elderly person or disabled

Case 2:17-cv-01349-JPS   Filed 07/02/20   Page 11 of 29   Document 143

person . . . ."[7] If, for example, the Walworth County Defendants had violated Wisconsin Statutes section 100.20, or the Wisconsin Deceptive Trade Practices Act, Wisconsin Statutes section 100.18, *see infra* Section 2.3.6., the Walworth County Defendants could have been subjected to an additional fine. However, the Court cannot impose an initial fine on the Walworth County Defendants because there is no evidence that the they violated either section 100.18 or section 100.20. Therefore, the Court need not further address the question of whether it must impose a "supplemental" forfeiture or fine under section 100.264. Plaintiffs' fifth claim for relief will be dismissed.

### 2.3.6. Sixth Claim for Relief

Plaintiffs allege that the Walworth County Defendants have violated the state "deceptive trade practices act," Wis. Stat. section 100.18. (Docket #36 at 32–33). To state a claim under the Wisconsin Deceptive Trade Practices Act ("WDTPA"), Plaintiffs must show that (1) the defendant made a representation to the public with the intent to induce an obligation; (2) the representation was untrue, deceptive, or misleading; and (3) the representation materially induced (caused) a pecuniary loss to the plaintiff. *Blitz v. Monsanto Co.*, 317 F. Supp. 3d 1042, 1052 (W.D. Wis. 2018).

Etzel's representations as to the values of the property did not induce an obligation. Further, the listed appraisal values in the record were neither

---

[7]For there to be a violation under Wisconsin Statutes section 100.264, the Court must also find that the Walworth County Defendants "knew or should have known" that their "conduct was perpetrated against [] elderly or disabled person[s]," and that such conduct caused the Plaintiffs to suffer any of the statutorily enumerated harms. *See* Wis. Stat. section 100.264(2)(a), (2)(b). Because the Walworth County Defendants did not violate any of the statutes listed in section 100.262(2), the Court need not engage in further analysis with regard to subsections 100.264(2)(a) and 100.264(2)(b).

untrue, nor deceptive, nor misleading. In fact, the listed appraisal values were less than the assessed fair market values. Plaintiffs provide no support for their determination as to the value of the parcels at issue. Even if Etzel's representation was untrue, deceptive, or misleading, Plaintiffs did not suffer a pecuniary loss as the result of this representation. Christopher Stoller never paid any money to Walworth County in connection with his bidding on the three parcels. As such, Plaintiffs do not make out a prima facia WDTPA claim against the Walworth County Defendants. Plaintiffs' WDTPA claim will be dismissed.

### 2.3.7. Seventh Claim for Relief

Plaintiffs assert that the Walworth County Defendants owed them a fiduciary duty and breached that duty. To state a claim for fiduciary duty, Plaintiffs must establish that "(1) the defendant owed the plaintiff a fiduciary duty; (2) the defendant breached that duty; and (3) the breach caused the plaintiff's damage." *Berner Cheese Corp. v. Krug*, 752 N.W.2d 800, 809 (Wis. 2008). Under Wisconsin law, a fiduciary duty arises when "the relationship is created by contract or a formal legal relationship such as principal and agent, attorney and client, trust and trustee, guardian and ward" or when the relationship is "implied in law due to the factual situation surrounding the transactions and relationships of the parties to each other and to the transactions in question." *Jackson v. McKay-Davis Funeral Home, Inc.*, 830 F. Supp. 2d 635, 648 (E.D. Wis. 2011).

There is no evidence on the record to support the creation of a fiduciary duty between any of the Walworth County Defendants, neither collectively nor individually, and any of the Plaintiffs. Even if there was evidence of a fiduciary duty, Plaintiffs have not been damaged. Plaintiffs' breach of fiduciary claim will be dismissed.

### 2.3.8. Eighth Claim for Relief

Lastly, Plaintiffs claim that the Walworth County Defendants and an unknown cohort of Walworth County employees and agents, "John Does 1–10," aided and abetted and conspired together to defraud Plaintiffs. Under Wisconsin law, to establish civil conspiracy, Plaintiffs must allege "(1) [t]he formation and operation of the conspiracy; (2) the wrongful acts or acts done pursuant thereto; and (3) the damage resulting from such act or acts." *City of Milwaukee v. NL Indus. Inc.*, 691 N.W.2d 888, 896 (Wis. Ct. App. 2005). As mentioned above, Plaintiffs have not been damaged. Further, they have not put forth any evidence of the formation of a conspiracy between Etzel, the Finance Committee, and/or any members of the Board of Supervisors. Even if there was evidence of a conspiracy— which there is not—there is no evidence of any wrongful acts. Again, Etzel and the Finance Committee took actions pursuant to Wisconsin Statutes section 75.69. Complying with state law is not a wrongful act. Therefore, Plaintiffs' state law civil conspiracy theory of liability fails.

Plaintiffs' aiding and abetting claim is subject to a similar fate. To be liable in tort for aiding and abetting, a person must "(1) undertake[] conduct that as a matter of objective fact aids another in the commission of a crime; and (2) [that] person consciously desires or intends that his conduct will yield such assistance." *Winslow v. Brown*, 371 N.W.2d 417, 422 (Wis. Ct. App. 1985). There is no evidence before the Court that any of the Walworth County Defendants, nor the unidentified John Does, committed any unlawful acts. Therefore, any alleged assistance from one Walworth County Defendant to another to carry out lawful actions pursuant to section 75.69 would have been perfectly acceptable. The Court dismisses this claim for relief.

### 2.4. Conclusion

Based on the foregoing, the Court grants the Walworth County Defendants' amended motion for summary judgment, (Docket #66), and denies their initial motion for summary judgment, (Docket #62), as moot. All claims against the Walworth County Defendants will be dismissed.[8]

## 3. THE WISCONSIN STATE DEFENDANTS

### 3.1. Relevant Facts

Plaintiffs named both Governor Anthony Steven Evers ("Governor Evers") in his official capacity and the State of Wisconsin as defendants (collectively, the "Wisconsin State Defendants"). (Docket #36 at 1). Plaintiffs' grievance against Governor Evers and the State of Wisconsin is that Wisconsin Statutes section 75.69, "Sale of tax delinquent real estate," is unconstitutional. *Id.* at 45–46.

### 3.2. Motion for Default

On March 31, 2020, Plaintiffs filed a motion for entry of default against Governor Evers. (Docket #102). Pursuant to Fed. R. Civ. P. 55(a), "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." The Court acknowledges that neither Governor Evers nor anyone on behalf of the State of Wisconsin has appeared in this case; however, that is because Plaintiffs did not properly serve these defendants.

Federal and Wisconsin law address how one must serve the state and state officials. A state "must be served" by either "delivering a copy of the

---

[8]Because, to date, the Plaintiffs have not identified the John Doe defendants *and* for the reasons discussed in Section 2.3.8., the Court also dismisses this claim as to the John Doe defendants.

summons and of the complaint to its chief executive officer[] or serving a copy of each in the manner prescribed by that state's law for serving a summons or like process on such a defendant." Fed. R. Civ. P. 4(j)(2). Under Wisconsin Statutes section 801.11(3), service can be made "[u]pon the state, by delivering a copy of the summons and of the complaint to the attorney general or leaving them at the attorney general's office in the capitol with an assistant or clerk." *See also State Dep't of Transp. v. Peterson*, 581 N.W.2d 539, 540 (Wis. Ct. App. 1998) ("[Section 801.11] provides that service on the State is accomplished by service upon the attorney general.").

Plaintiffs assert that they served a copy of the complaint and summons on Governor Evers on October 24, 2019. (Docket #102 at 9). As "proof" of such service, Plaintiffs attach a copy of a "Green Card Return Card" Postal Service Form 3811, which indicates that the complaint and summons were sent by certified mail. *Id.* Plaintiffs also state that they sent another copy to the Wisconsin Attorney General's office. *Id*. It is clear that such service is improper as to Governor Evers and the State of Wisconsin. *Shah v. Wis. Dep't of Transp.*, Civil No. 09-6441 (AET), 2010 WL 2640210 at *1 (D.N.J. June 28, 2010) ("[S]ervice by e-mail, fax, or mail is not provided for in either Rule 4(j)(2) or the applicable state statute."); *Robinson v. Johnson*, No. 07C0606, 2007 WL 3025768, at *1 (E.D. Wis. Oct. 15, 2007). Because service was improper, Governor Evers had "no obligation to respond to the complaint." *Rowe v. Davis*, 373 F. Supp. 2d 822, 824 (N.D. Ind. 2005). The Court denies Plaintiffs' motion for entry of default (Docket #102).

### 3.3. Dismissal of Claims Against the Wisconsin State Defendants

At this juncture the Court also finds it prudent to dismiss, *sua sponte*, Plaintiffs' claims against the Wisconsin State Defendants.

### 3.3.1. Legal Standard

The Seventh Circuit has held that "[s]*ua sponte* 12(b)(6) dismissals are permitted, provided that a sufficient basis for the court's action is evident from the plaintiff's pleading." *Shield Tech. Corp. v. Paradigm Positioning, LLC*, 908 F. Supp. 2d 914, 917 (N.D. Ill. 2012) (quoting *Ledford v. Sullivan*, 105 F.3d 354, 356 (7th Cir. 1997)). "The purpose of a Rule 12(b)(6) motion to dismiss is to test the sufficiency of the complaint, not to resolve the case on the merits. *Shield Tech. Corp.*, 908 F. Supp. 2d. at 917 (citing 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356, at 354 (3d ed. 2004)).

To state a cognizable claim under the federal notice pleading system the plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). It is not necessary for the plaintiff to plead specific facts, and his statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). However, a complaint that offers "labels and conclusions" or a "formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). To state a claim, a complaint must contain sufficient factual matter that, accepted as true, "is plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The complaint allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted). In considering whether a

complaint states a claim, courts should follow the principles set forth in *Twombly* by, first, "identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. Legal conclusions must be supported by factual allegations. *Id.* If there are well-pleaded factual allegations, the court should, second, "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

### 3.3.2. Analysis

Plaintiffs baldly assert that Wisconsin Statute section 75.69 is unconstitutional "on the grounds that it is vague, promotes illegal conduct, violates the first, fifth and fourteen [sic] amendments of the U.S. Constitution." (Docket #36 at 46). Plaintiffs attempt to expound on *some* of these allegations, but to no avail. For example, with regard to the statute's alleged vagueness, Plaintiffs state that "[t]he vagueness pervades the statute . . . to make the entire statute invalid. Especially as it relates to the obligations of the Counties [sic] to obtain valid appraisals." *Id.* Similarly, Plaintiffs allege:

> that the statute violated their equal protection rights on the basis that, because there was no rational relationship between the Statute [sic] and any legitimate government objective, the only discernible purpose was to give the Counties an incentive to foreclose on its citizens [sic] tax delinquent property in order to re sell [sic] that property not for the back taxes, but for inflated market values based upon phony appraisals.

*Id.* Lastly, Plaintiffs "argue that the statute promotes an unauthorized use of the police power to seize citizen's property in violation of due process." *Id.*

Case 2:17-cv-01349-JPS   Filed 07/02/20   Page 18 of 29   Document 143

These assertions will not do, as they are both unclear and void of factual allegations. For example, Plaintiffs assert that the statute in question violates the First Amendment. But Plaintiffs' complaint does not specify the First Amendment right at issue, nor provide any facts to support this assertion.

Plaintiffs' Fifth Amendment claim is also hopelessly vague. Assuming that Plaintiffs explained that this statute was unconstitutional pursuant to the Takings Clause of the Fifth Amendment—which they did not—Plaintiffs must have pled that "(1) they have a property interest protected by the Fifth Amendment, (2) the [statute] effected a taking of that interest, (3) the taking was for public use, and (4) the state did not provide just compensation." *Joe Sanfelippo Cabs Inc. v. City of Milwaukee*, 148 F. Supp. 3d 808, 811 (E.D. Wis. 2015) (footnote omitted) (citing *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1000–01 (1984)). Plaintiffs' Fourteenth Amendment claims are just as sparse and, therefore, fare no better.

### 3.3.3. Conclusion

The Court refuses to scour Plaintiffs' complaint any further. Seeing that they have not met the federal pleading standard in the slightest, the Court dismisses Count 9, *sua sponte*, against the Wisconsin State Defendants.

## 4. THE COMO PROPERTY OWNERS

### 4.1. Relevant Facts

Defendants Donald J. Crowley and Diana S. Crowley are the current owners of parcel Tax Key No. JLCB 00986. (Docket #36 at 11). The Delevan

Lake Assembly[9] is the current owner of parcel Tax Key No. FDLA 00208. *Id.* Plaintiffs allege that these defendants, along with several current and former members of the Delevan Lake Assembly's Board of Directors,[10] are "Members of the [RICO] Enterprise." *Id.* Although allegedly a part of this enterprise, the complaint does not mention these defendants (hereinafter, the "Como Property Owners") again until Count Eleven, "Claim for Relief Quiet Title." *Id.* at 49–50. The Como Property Owners have filed separate 12(b)(6) motions to dismiss for failure to state a claim. (Docket #56, #80).

### 4.2. Legal Standard

The Court has already discussed the pleading standard required to survive a Rule 12(b)(6) motion. *See* Section 3.3.1. *supra.* Although unclear, because Plaintiffs *may* be bringing a RICO complaint against the Como Property Owners, the Court notes that, in a civil RICO complaint "[a]llegations of fraud . . . are subject to the heightened pleading standard of Federal Rule of Civil Procedure 9(b), which requires a plaintiff to plead 'all averments of fraud . . . with particularity.'" *Goren v. New Vision Int'l, Inc.,* 156 F.3d 721, 726 (7th Cir. 1998) (quoting Fed. R. Civ. P. 9(b)). In other words, the complaint must describe the "who, what, when, where, and how" of the alleged fraud. *Wigod v. Wells Fargo Bank, N.A.,* 673 F.3d 547, 569 (7th Cir. 2012).

---

[9]Plaintiffs incorrectly refer to the Delevan Lake Assembly, and its current and past Board members, as the "Douglass Lake Assembly." (Docket #36 at 1, Docket #80 at 1). The Court directs that the docket be corrected accordingly.

[10]Those members include Michael Connolly, Steven Schamidt, Henry Rackiewicz, and Bill Winters.

Case 2:17-cv-01349-JPS    Filed 07/02/20    Page 20 of 29    Document 143

### 4.3. Analysis

The only factual statement regarding the Como Property Owners in the complaint is that the Como Property Owners currently own the parcels that Christopher Stoller bid on. (Docket #36 at 49). That is all. Plaintiffs' allegations against the Como Property Owners do not meet the pleading standard under Federal Rules of Civil Procedure 8(a), much less the heightened pleading standard of Rule 9(b).

Donald Crowley and Diana Crowley point out that they are named as the "Como Property Owners" on the first page of the complaint but are later referred to as the "Como Defendants." (Docket #36 at 11). Because the allegations in Count 10 are against the "Como Defendants," for good measure, the Crowley's 12(b)(6) motion also addresses Count 10. In Count 10, Plaintiffs allege that the Como Defendants agreed to, but did not, bring water and sewer services to Christopher Stoller's property. *Id.* at 47–48. Plaintiffs seek "Specific Performance" from the Como Defendants. *Id.* at 47. Plaintiffs do not include any mention of either the Crowleys or the Lake Delevan Assembly in Count 10 of their complaint. If Plaintiffs meant to bring Count 10 against the Como Property Owners, they did not do so in a way that comports with the federal pleading requirements.

### 4.4. Conclusion

Because Plaintiffs have failed to sufficiently plead any cause of action against the Como Property Owners, the Court grants the Como Property Owners' respective 12(b)(6) motions to dismiss, (Docket #56, #80).

5. **THE SANITARY DISTRICT DEFENDANTS**

### 5.1. Relevant Facts[11]

Plaintiffs bring Count 10 of their complaint against the Lake Como Wisconsin Sanitary District, Gary Duffy, Ron Sojka, Joe Roberts, and Rich Scholze (collectively, the "Sanitary District Defendants"). Plaintiffs allege that in 2017 they "made a demand" on the Sanitary District Defendants to bring sewer and water to Christopher Stoller's property in Lake Geneva, Wisconsin for "no additional charge." (Docket #36 at 47–48). Plaintiffs further assert that for the past two years, the Sanitary District has refused to do so, rendering Christopher Stoller's home "unlivable." *Id.* at 47. In their complaint, Plaintiffs insert an e-mail, dated Friday, July 14, 2017, between Ray Seitz ("Seitz") the former District Manager of the Lake Como Sanitary District No. 1, and Christopher "Nick"[12] Stoller. *Id.* at 48. In his e-mail, Seitz explained that he is going to "make up a drawing" and asks Christopher Stoller if he is "still planning on providing a sewer lateral sketch?" *Id.*

Plaintiffs provided the Court with only an excerpt of the e-mail exchange; fortunately, Gary Duffy ("Duffy"), the current President of the Lake Como Sanitary District No. 1, included the entire e-mail conversation.

---

[11]Because Plaintiffs have not filed their proposed findings of fact, and because the Sanitary District Defendants filed their proposed findings of fact several months after they filed their initial motion for summary judgment, (Docket #46, #98), the Court shall treat Plaintiffs' sworn complaint, (Docket #36), and the Sanitary District Defendants' sworn affidavits in support of their motion for summary judgment, (Docket #48–#51), as statements of fact to the extent they are supported by credible evidence. *See Ford v. Wilson*, 90 F.3d 246, 246–47 (7th Cir. 1996) (The court can construe a sworn complaint as an affidavit at the summary judgment stage.).

[12]At one point in this e-mail exchange, Christopher Stoller addressed himself as "C. Nick Stoller," and Seitz referred to him as "Nick" throughout. (Docket #51 at 4–5).

*See* (Docket #51 at 4–8). On June 26, 2017, Christopher Stoller sent an e-mail to several recipients affiliated with the Town of Geneva, Wisconsin. *Id*. at 8. In this e-mail, he requested that the Town of Geneva assist him in bringing water and sewer to the property. *Id.* Although he indicated that it was a "financial hardship" to pay for the extension, he did not ask for such services to be provided free of charge. *Id.* The Chairman of the Town of Geneva, Joe Kopecky, forwarded this e-mail to Seitz and Duffy. *Id.* at 1, 7.

According to a June 26, 2017 e-mail, Seitz, Christopher Stoller, and Christopher Stoller's contractor had recently discussed Stoller's proposed water main extension project. *Id.* at 5. In this e-mail, Seitz twice referred to costs associated with the project. *Id.* After not hearing from Christopher Stoller for a couple of weeks, Seitz sent a follow up e-mail on July 13, 2017. *Id.* Christopher Stoller replied, thanking Seitz and asking him for a list of the items he needed in preparation of a "Commission" meeting. *Id.* at 4. Seitz's reply is the same e-mail that Plaintiffs produced in their complaint. To reiterate—this e-mail does not mention costs or the waiver thereof. *Id.* Seitz affirms that he will have a preliminary drawing and asks if Christopher Stoller will provide a sketch. *Id.* In the subsequent e-mail, Christopher Stoller apologizes for the delay and then asks someone named Mark, included on the e-mail, to prepare a sketch. *Id.* Aside from these communications between Seitz and Christopher Stoller, none of the named Sanitary District Defendants had any communications with Plaintiffs. (Docket #48 at 2, #49 at 1, #50 at 1, #51 at 2).

Duffy also submitted a copy of two Lake Como Sanitary District No. 1 policies: Policy #1-98, "Relating to Future Sewer Main Extensions" and Policy #2-98, "Relating to Future Water Main Extensions." (Docket #51 at 9–18). Both policies make clear that applicants for such extensions are not only

responsible for the application fees but also must "pay all costs determined allocable to applicant by the Commission, including all costs associated with road opening, construction or reconstruction necessitated by the extension." *Id.* at 9–10, 14–15.

Plaintiffs request both specific performance and damages. *Id.* On January 30, 2020, the Sanitary District Defendants filed a motion for judgment on the pleadings and for summary judgment. (Docket #46).[13] On February 20, 2020, this Court granted Plaintiffs' motion for extension, giving Plaintiffs until March 10, 2020 to respond. (Docket #58). To date, Plaintiffs have not filed a response. The Sanitary District Defendants later filed an amended motion for judgment on the pleadings and for summary judgment, (Docket #99), and their Proposed Findings of Fact, (Docket #98).

---

[13]It appears to the Court that the Sanitary District Defendants have been improperly joined in this action. "Persons . . . may be joined in one action as defendants if any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences[] and any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). Although "[t]he rules are broad," the Seventh Circuit has made clear that "[u]nrelated claims against different defendants belong in different suits." *UWM Student Ass'n v. Lovell*, 888 F.3d 854, 863 (7th Cir. 2018) (quoting *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007)). Plaintiffs' allegations against the Sanitary District Defendants pertain to the property Christopher Stoller already owns, parcel Tax Key No. JLCB 00990, not any of the three properties Christopher Stoller bid on, Tax Key Nos. JLCB 00986, JLCB 2054, and FDLA 00208. Further, there are no allegations in Plaintiffs' complaint that suggest any relationship between the Sanitary District Defendants and any of the other defendants. Based on the foregoing, the Court determines that the Sanitary District Defendants have not been properly joined. However, because "[t]he proper remedy for [misjoinder] is severance or dismissal without prejudice, not dismissal with prejudice," the Court will address the Sanitary District Defendants' motion, (Docket #46). *Lovell*, 888 F.3d at 864.

### 5.2. Legal Standard

Because the Court has considered materials outside of the pleadings, it will treat the Sanitary District Defendants' motion as a motion for summary judgment pursuant to Rule 12(d). The Court previously outlined the applicable legal standard it must use when analyzing a motion for summary judgment in Section 2.2. *supra*.

### 5.3. Analysis

Count 10 of Plaintiffs' complaint appears to allege either that the Sanitary District Defendants promised to bring sewer and water to Christopher Stoller's property, or that there was a contract between Christopher Stoller and the Sanitary District Defendants. The Court addresses, and dismisses, both claims in turn.[14]

#### 5.3.1. Breach of Contract

"In order that a contract may arise, three things must concur: [f]irst, the offer; second, the acceptance; and, third, the consideration." *Briggs v. Miller*, 186 N.W. 163, 164 (Wis. 1922). "[A]n offer must be so definite in its terms, or require such definite terms in its acceptance, that the promises and performances to be rendered by each party are reasonably certain." *Farnsworth, McKoane & Co. v. N. Shore Sav. & Loan Ass'n*, 504 F. Supp. 673, 676 (E.D. Wis. 1981) (quoting *Goebel v. Nat'l Exchangors, Inc.*, 277 N.W.2d 755, 765 (Wis. 1979). Based on the e-mail exchange with Seitz, Christopher Stoller requested a sewer and water extension. This request is not an offer. Even if it was to be construed as such, there is no evidence of either

---

[14]Like the Walworth County Defendants, the Sanitary District Defendants also allege these claims are precluded due to immunity and Plaintiffs' failure to comply with the notice requirements provided in Wisconsin Statutes section 893.80(1d). Again, Plaintiffs' state law claims fail as a matter of law, therefore, the Court does not address questions of immunity or notice.

Case 2:17-cv-01349-JPS    Filed 07/02/20    Page 25 of 29    Document 143

acceptance or consideration. Further, none of the communications between Seitz and Christopher Stoller show an offer by the District to provide any services to Christopher Stoller free of charge. Based on this evidence, there is no genuine dispute of material fact. Plaintiffs' claims for breach of contract will be dismissed.

### 5.3.2. Promissory Estoppel

"A claim of promissory estoppel involves three elements: (1) whether the promise is one which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee; (2) whether the promise induced such action or forbearance; and (3) whether injustice can be avoided only by enforcement of the promise." *Bicknese v. Sutula*, 660 N.W.2d 289, 294 (Wis. 2003). Plaintiffs have not put forth any evidence indicating that the Sanitary District Defendants made them any promises regarding a sewer or water main extension, much less a promise for an extension at no cost to Christopher Stoller. The e-mails between Seitz and Christopher Stoller are purely preliminary. Further, all of the named Sanitary District Defendants assert that at no time did they ever, either collectively or individually, have any contact or communications with Plaintiffs. (Docket #48 at 2, #49 at 1, #50 at 1, #51 at 2). Without communication, there can be no promise; without a promise, there is no claim for promissory estoppel. Plaintiffs' promissory estoppel claim against the Sanitary District Defendants will be dismissed.

### 5.4. Conclusion

Seeing that there are no genuine issues of material fact with respect to either of Plaintiffs' claims against the Sanitary District Defendants, the Court will grant the Sanitary District Defendants' motion for summary

judgment, (Docket #46). The Court will deny the Sanitary District Defendants' amended motion for summary judgment, (Docket #99), as moot.

## 6. MISCELLANEOUS MOTIONS

Because the Court dismisses all of Plaintiffs' claims against all Defendants in this case, the Court will summarily deny the following motions by Plaintiffs as moot: Docket #88, #90, #92, #93, #94, #95, #96, #104, #111, #113, #130, #131, #136. The Court also grants Diana S. Crowley and Donald J. Crowley's motion to withdraw their motion for sanctions, (Docket #137), and denies their initial motion for sanctions as moot, (Docket #133).

Accordingly,

**IT IS ORDERED** that the Lake Como Wisconsin Sanitary District, Gary Duffy, Ron Sojka, Joe Roberts, and Richard Scholze's motion for summary judgment, (Docket #46), be and the same is hereby **GRANTED**; their amended motion for summary judgment, (Docket #99), be and the same is hereby **DENIED as moot**;

**IT IS FURTHER ORDERED** that Donald J. Crowley and Diana S. Crowley's motion to dismiss, (Docket #56), be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that the Delevan Lake Assembly, Michael Connolly, Steven Schamidt, Henry Rackiewicz, and Bill Winters' motion to dismiss, (Docket #80), be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Walworth County, Valerie Etzel, Randy Timms, William Norem, Tim Brellenthin, Paul Yvarra, Charlene Staples, Kathy Ingersoll, David Weber, Daniel G. Kilkenny, Susan M. Pruessing, Kenneth H. Monroe, and Nancy Russell's amended motion for

summary judgment, (Docket #66), be and the same is hereby **GRANTED**; their initial motion for summary judgment, (Docket #62), be and the same is hereby **DENIED as moot**;

IT IS FURTHER ORDERED that Plaintiffs' motion for default against Defendant Governor Anthony Steven Evers, (Docket #102), be and the same is hereby **DENIED**;

IT IS FURTHER ORDERED that Plaintiffs' claims against Defendants Governor Anthony Steven Evers and the State of Wisconsin be and the same are hereby **DISMISSED with prejudice**;

IT IS FURTHER ORDERED that Plaintiffs' motion to disqualify counsel and for criminal contempt, (Docket #88), be and the same is hereby **DENIED as moot**;

IT IS FURTHER ORDERED that Plaintiffs' motions for certification and to stay pending appeal, (Docket #90, #95), be and the same are hereby **DENIED as moot;**

IT IS FURTHER ORDERED that Plaintiffs' motions to disqualify counsel, (Docket #92, #93, #94), be and the same are hereby **DENIED as moot**;

IT IS FURTHER ORDERED that Plaintiffs' motion for an extension of time for trial dates and request to file electronically, (Docket #96), be and the same is hereby **DENIED as moot**;

IT IS FURTHER ORDERED that Plaintiffs' motion for sanctions, (Docket #104), be and the same is hereby **DENIED as moot**;

IT IS FURTHER ORDERED that Plaintiffs' motions for hearing before a different judge, (Docket #111, #113), be and the same are hereby **DENIED as moot**;

**IT IS FURTHER ORDERED** Plaintiffs' motion for judgment against the Walworth County Defendants and their counsel, (Docket #130), be and the same is hereby **DENIED as moot**;

**IT IS FURTHER ORDERED** that Plaintiffs' motion for an order to determine the sufficiency of Defendants' responses, (Docket #131), be and the same is hereby **DENIED as moot**;

**IT IS FURTHER ORDERED** that Plaintiffs' motion for judicial notice, (Docket #136), be and the same is hereby **DENIED as moot**;

**IT IS FURTHER ORDERED** that Diana S. Crowley and Donald J. Crowley's motion to withdraw motion for sanctions (Docket #137) be and the same is hereby **GRANTED;**

**IT IS FURTHER ORDERED** that Diana S. Crowley and Donald J. Crowley's motion for sanctions (Docket #133) be and the same is hereby **DENIED as moot**; and

**IT IS FURTHER ORDERED** that this case be and the same is hereby **DISMISSED with prejudice**.

The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 2nd day of July, 2020.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge